67473. AGUERO v. THE STATE.

BIRDSONG, Judge.

William Ray Aguero was convicted of trafficking in cocaine and sentenced to serve seven years and to pay a $50,000 fine. He brings this appeal enumerating two asserted errors. *Held:*

1. Facts pertinent to a resolution of this appeal show that Aguero deplaned in Atlanta from a flight from Miami, Florida, at about 9:00 a.m. Aguero was observed to have only one small piece of luggage. He immediately ascertained that a connecting flight to Augusta would leave in just over an hour and departed to the gate for the Augusta flight without obtaining other baggage. The early morning flight and the paucity of luggage caused a DEA agent to want to make further inquiry into Aguero's status. The agent followed Aguero to the gate of the Augusta flight and observed Aguero

surrender his ticket and obtain a boarding pass. Aguero then went into a bar or store in the airport near to his gate. The agent then obtained the copy of the ticket from the flight attendant at the gate and noted that the ticket was issued in the name of J. Mervis. No telephone number had been given by Mervis. The computer check showed that "Mervis" had booked a flight to Miami the evening before to arrive in Miami after 10:00 p.m., after all businesses normally have closed. He booked a return to Atlanta at 7:00 a.m. the next morning before businesses usually are open and arrived in Atlanta at about 9:00 a.m. The officer was aware of the seven principal characteristics of a drug carrier, more particularly: (1) the arrival from a source city (Miami); (2) carrying little or no luggage; (3) unusual itinerary, such as rapid turn around time for a lengthy airplane trip; (4) use of an alias; (5) paying for the ticket by cash.

Although the DEA agent did not know at that time that Aguero was using an alias, there were enough incidences relating to the passenger's flight characteristics to arouse an articulable suspicion that he might be a drug carrier. Accordingly, when Aguero left the bar or shop in which he had been passing away time to board his continuation flight, the agent and another met Aguero in the corridor and presented Aguero with his police credentials. Aguero was informed in a normal, conversational tone of voice that the two men were police officers and was asked if he would talk with the officers. Aguero agreed to do so. The agent then asked to see Aguero's ticket and observed that it was made out to J. Mervis. Upon being asked, Aguero acknowledged that he was Mervis but upon further request could not produce any identification. This encounter lasted only a matter of several minutes. When Aguero could not produce identification, the agents informed Aguero that they were charged with the responsibility of looking for and preventing the flow of drugs through the airport. Aguero was asked if he was carrying any drugs on his person or in his one piece of luggage. When Aguero denied carrying any drugs, he was asked if he would consent to a pat-down search of his person and a search of his luggage. Aguero readily consented to the search. The agents stated that the search could be conducted there in the corridor or the three men could go to a nearby room where the pat-down and search of the luggage could be conducted in more privacy. Aguero requested that it be conducted in the privacy of the adjoining room. During this entire time, all conversation had been in a normal conversational tone and at no time had the officers displayed weapons or physically touched Aguero.

Upon entering the room, the following rights were read to Aguero: "You have the right to allow or refuse to allow a search to be made of your person and the personal property you have with you.

You have the right to consult with an attorney before deciding whether you wish to allow or refuse to allow the searches. If you consent to the searches, any illegal objects found can be used against you in court proceedings. Do you understand?" After being advised of these rights, Aguero stated that he understood his rights and advised that he still consented to the search of his person and his luggage.

As the agent was finishing the pat-down search, he felt a soft object, round and several inches long stuffed into one of Aguero's socks. The item had the consistency of powder. As soon as the officer felt the package, Aguero bolted from the room and was pursued several hundred yards by the officers in the corridor of the airport. Eventually he was cornered. Aguero was seen removing a rolled package from his sock and throwing it under an empty display case standing in the corridor. Aguero attempted to evade the officer but was tackled and apprehended. The package was recovered and ultimately found to have almost 38 grams of 74% pure cocaine. Expert testimony established that the quantity of pure cocaine was from a minimum of 27-1/2 grams to 28-1/2 grams of pure cocaine, the remaining ten grams being a sugar-cutting agent.

2. Based upon the foregoing facts, the trial court denied Aguero's motion to suppress the product of the search, wherein Aguero complained that he had been arrested and that the arrest was not based upon probable cause that a crime was being or had been committed. This denial of that motion forms Aguero's first enumeration of error.

The three tiers of inquiry concerning such police-citizen contact adopted by our Supreme Court are: (1) Was the initial interview conducted in a non-coercive manner (i.e., without display of weapons or in the absence of peremptory or commanding tone of voice), and did that interview intrude upon any protections afforded to an airline passenger by the Fourth Amendment; (2) Was the beginning seizure brief in time and solely for investigative purposes based upon an articulable suspicion; or (3) Was the seizure of a nature reasonably to cause the seized party to believe that his freedom was removed and in such a case were there articulable facts sufficient to raise probable cause that a crime was in progress, i.e., was there probable cause for a full scale arrest? *Yocham v. State,* 165 Ga. App. 650 (302 SE2d 390).

Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen should it be concluded that a seizure of that person has occurred. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). In Terry, it was concluded that even though a police pat-down of a citizen may constitute a "seizure" within the meaning of the Fourth Amendment, nevertheless, such a

pat-down can be based on a showing of "reasonable suspicion" that criminal activity is afoot rather than the more rigorous standard of "probable cause" that a particular crime has been committed.

Within the dichotomy of a "seizure" amounting to an arrest or a brief investigatory stop, if in view of all the attendant circumstances, a reasonable person would have believed that he was not free to leave, he has been seized (i.e., arrested). United States v. Mendenhall, 446 U. S. 544 (100 SC 1870, 64 LE2d 497). Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *State v. Reid,* 247 Ga. 445, 449 (276 SE2d 617).

Profile characteristics are a valuable administrative tool in guiding law enforcement officers toward individuals on whom the officers should focus their attention to determine if there is a basis for a specific and articulable suspicion that the particular individual might be smuggling drugs. *State v. Reid,* supra, p. 600. As indicated previously in the discussion of the facts, Aguero had exhibited a number of the key characteristics of a drug smuggler profile. He was asked in a conversational tone of voice by a police officer who was dressed in casual, civilian attire, if he (Aguero) would converse with them. Only when he said he would do so was he asked to present his plane ticket and identification. At no time was he touched by either officer until the actual pat-down to which Aguero had assented after being advised that he did not have so to consent. Moreover, he consented to accompany the officers, at his request, to a private room where the limited person pat-down search was to occur.

On the basis of these facts, we find that the officer's mere approach to Aguero and asking to talk to him did not constitute a seizure. By the time there was even the limited "seizure" of a Terry stop, the officer knew that Aguero met several indicia of the drug carrier profile, and could not produce identification. These factors were suffcient to serve as a basis for reasonable suspicion to focus upon Aguero to justify the brief Terry-type investigative "seizure." United States v. Berry, 670 F2d 583, 599 (5th Cir. 1982). Moreover, because Aguero was told that he did not have to submit to a search of his person or his baggage and that he could consult with an attorney before deciding whether to consent or refuse, we further conclude that Aguero freely consented to the pat-down search. United States v. Berry, supra, pp. 601, 602. Finally, it is clear that the pat-down search revealed probable cause for the arrest of Aguero. Under the facts presented in this case, we find no error in the trial court's denial of

appellant's motion to suppress. This enumeration is without error.

3. In his second enumeration of error, Aguero complains that the indictment charging him with trafficking in cocaine alleged the possession of more than 28 grams of cocaine. He contends the testimony of the forensic expert, however, authorized a finding beyond reasonable doubt only of 27-1/2 grams of pure cocaine in the mass allegedly possessed.

The chemist and the arresting officer both testified that Aguero had possessed approximately 38 grams of 74% pure cocaine. The offense of trafficking in cocaine is committed whether cocaine is delivered in a pure form or is present in a mixture containing other substances, as long as the quantity of the mass is more than 28 grams. There was no variance between the amount alleged in the indictment and the amount proved possessed. Appellant was not prevented from preparing his defense nor were there any surprises at trial. The state had no duty to prove the presence of more than 28 grams of pure cocaine where it proved more than 28 grams of mass containing cocaine. *Belcher v. State,* 161 Ga. App. 442, 443 (1) (288 SE2d 299).

*Judgment affirmed. McMurray, C. J., and Shulman, P. J., concur.*

DECIDED JANUARY 5, 1984.

T. *Michael Martin,* for appellant.

*Robert E. Keller, District Attorney, William L. McKinnon, Jr., Assistant District Attorney,* for appellee.