## S91G0962. JAMISON v. THE STATE.
### (414 SE2d 466)

PER CURIAM.

We granted certiorari in this case, *Jamison v. State*, 199 Ga. App. 401 (405 SE2d 82) (1991), to consider whether the Court of Appeals correctly affirmed the trial court's denial of appellant Jamison's motion to suppress. The facts of this case are set forth in the Court of Appeals' opinion, and will only be reiterated here where necessary.

The majority of the Court of Appeals held that Jamison's conduct in running two steps from the DEA agents, along with the circumstances that arose before Jamison ran, constituted probable cause to arrest Jamison. The majority therefore affirmed the trial court's denial of Jamison's motion to suppress. See *Jamison*, supra, 199 Ga. App. at 405 to 406. The dissenters to the majority opinion, however, believed that the circumstances existing before Jamison ran did not present any legal basis for arresting Jamison, id. at 408, and that Jamison's flight of two steps

> signified a consciousness of guilt no more clearly than it did a natural desire to avoid the persistence of an officer who refused to take "no" for an answer. Given the cooperation provided by appellant and his brother, their open acknowledgment of each other and their relationship, (cit.), the legal identification they produced, (cit.), and the lack of nervousness they displayed until Toles pressed for a body search, (cit.), appellant's two running steps from the non-custodial presence of an officer who would not accept appellant's refusal as an answer could not have warranted a man of reasonable caution in the belief that a felony had been committed. *Wong Sun (v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963)). "A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked. [Cit.]" Id. at 484. [*Jamison*, supra, 199 Ga. App. at 409.] [Parentheticals supplied. Bracket in original.]

We find persuasive the *Jamison* dissenters' conclusion that Toles did not have probable cause to arrest Jamison, and we therefore reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur; Sears-Collins, J.,*

*not participating.*

BELL, Justice, concurring.

I agree with the reversal of the Court of Appeals' judgment for the reason given in the per curiam opinion. However, I find that there is another ground on which to reverse, and that an explanation of that ground will be useful to the bench and bar, as well as to police who use the drug courier profile.

I conclude that Jamison was "seized" within the meaning of the Fourth Amendment before he, according to Agent Toles, "broke and ran," and that the seizure was not justified by a reasonable suspicion that Jamison was committing a crime. I further conclude that the evidence seized from Jamison was tainted by this illegal seizure and should have been suppressed.

1. A police stop of an individual does not become a seizure within the meaning of the Fourth Amendment, unless "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U. S. 544, 554 (100 SC 1870, 64 LE2d 497) (1980). Accord *Bothwell v. State*, 250 Ga. 573, 577 (4) (300 SE2d 126) (1983). Once a court determines that a stop is a seizure, the seizure is constitutional only if based on reasonable suspicion that the person seized has committed or is about to commit a crime. *Florida v. Royer*, 460 U. S. 491, 498 (2, 3) (103 SC 1319, 75 LE2d 229) (1983); *Bothwell*, 250 Ga. at 576, 577. Finally, if a defendant is seized without reasonable suspicion, the test for determining the admissibility of evidence gathered after the illegal seizure is whether,

> "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." [*Wong Sun v. United States*, 371 U. S. 471, 488 (83 SC 407, 9 LE2d 441) (1963).]

2. In the instant case, I find, as I will subsequently explain, that Jamison was seized within the meaning of the Fourth Amendment before he "broke and ran." However, before determining whether, under the circumstances of this case, Jamison was seized before he "broke and ran," I will first examine the circumstances of two other cases and the conclusions those cases reached regarding seizure.

In *Florida v. Royer*, supra, 460 U. S., a plurality of the Court concluded that Royer was seized within the meaning of the Fourth Amendment because officers identified themselves as narcotics officers, told Royer he was suspected of transporting narcotics, asked him to accompany them to a private room while they retained his

airline ticket and driver's license, and did not indicate to Royer he was free to depart. Id. at 501-502. Justice Brennan, concurring in the result, felt that Royer had been seized at an earlier point, when the officers asked to see his ticket and driver's license. Id. at 511-512.

In *Reid v. State*, 247 Ga. 445 (276 SE2d 617) (1981), a DEA agent stopped Reid and a companion outside the airline terminal, and requested Reid and his companion to return to the terminal and consent to a search. The agent's weapon was not visible to Reid or his companion. We concluded that, considering those circumstances as a whole, a reasonable person would have believed he was free to leave. Id. at 450.

I will now analyze the circumstances of the instant case in light of *Royer* and *Reid*. The DEA agents in this case identified themselves as narcotics agents, asked to look at Jamison's airline ticket and driver's license, and told Jamison they were looking for narcotics coming through the airport. Moreover, even though Jamison furnished proper identification to and cooperated with the officers, the officers ignored his refusals to give his consent to be searched and continued to press him to submit to a search in a private area of the airport. Further, the officers did not inform Jamison he was free to leave.

I conclude that there is an element of constraint in this case that is more like *Royer*, supra, 460, U. S., than *Reid*, supra, 247 Ga. Royer, Reid, and Jamison all knew they were the focus of law enforcement investigations, and thus must have felt constrained, to some extent, to comply with the DEA agents. However, no further constraint was imposed upon Reid, and we concluded that a reasonable person in his situation would have felt free to depart. *Reid*, supra, 247 Ga. at 450. On the other hand, in *Royer* the DEA agents asked Royer to accompany them to a private room while they retained his ticket and driver's license. Given these factors, the Supreme Court concluded that a reasonable person, not informed of his right to leave, would not have felt free to do so. *Royer*, supra, 460 U. S. at 501-502. Like *Royer*, an additional element of constraint is present in this case. Here, because the DEA agents refused to honor Jamison's refusal to consent to a search, I believe that a reasonable person in Jamison's position, not informed of his right to depart, would have felt he was not free to leave the presence of the DEA agents.

Accordingly, I conclude Jamison was seized before he "broke and ran."

3. Having determined that Jamison was seized before he "broke and ran," I next evaluate whether the DEA agents had a reasonable suspicion that Jamison had committed or was about to commit a crime at the time of the seizure. In making this evaluation, I must consider "the totality of the circumstances," including any character-

istics of the drug courier profile. *United States v. Sokolow*, 490 U. S. 1 (109 SC 1581, 1585, 104 LE2d 1) (1989). Accord *Reid v. Georgia*, 448 U. S. 438 (100 SC 2752, 65 LE2d 890) (1980); *Bothwell*, supra, 250 Ga. at 577-578, 580.

I find that an examination of *Sokolow, Reid*, and *Bothwell* provides guidance in determining whether the DEA agents in this case had reasonable suspicion. Sokolow fit several characteristics of the drug courier profile. He was carrying an unusually large amount of cash and purchased his airline tickets of $2,100 with a roll of $20 bills. Moreover, he was traveling under an alias to Miami, a drug source city. Although the drug courier profile did not include an evaluation of the fact that Sokolow had traveled 20 hours from Honolulu to spend 48 hours in Miami in July, the Court nevertheless considered those circumstances to be unusual and to be relevant to a determination of reasonable suspicion. The Court concluded that the foregoing factors, considered as a whole, amounted to reasonable suspicion. *Sokolow*, supra, 490 U. S. at 8-9.

In *Reid*, supra, 448 U. S., the Court concluded that a DEA agent did not have reasonable suspicion to seize Reid even though the seizure was based on the match between Reid's behavior and several aspects of the drug courier profile. The agent knew that Reid and his companion were traveling from a drug source city; that they had no luggage other than shoulder bags; that they were traveling early in the morning, when police activity is low; and that they were attempting to conceal the fact they were traveling together. Id. at 441. The Court concluded that the first three of these factors described a large number of innocent travelers and hence were insufficient to establish reasonable suspicion, and that the last factor was insufficient under the facts of the case to establish reasonable suspicion. Id. at 441.

The facts of *Bothwell* are that Bothwell traveled from a drug source city under a false name, carried little or no luggage, purchased his airline ticket in cash, acted very nervous, gave the airline a false call-back telephone number, and gave the DEA agent a false telephone number for his residence. *Bothwell*, supra, 250 Ga. at 574-575. In concluding that the DEA agent had reasonable suspicion to justify a seizure of Bothwell, we found it critical that Bothwell gave false information to the airline concerning his call-back telephone number and false information to the DEA agent concerning the telephone number of his residence. Id. at 580.

Turning to the facts of the instant case, I see that Jamison's behavior fit certain characteristics of the drug courier profile. He was traveling from a source city; he paid for his ticket with cash; he did

not leave a call-back telephone number with the airline company;[1] he was traveling with only one piece of luggage; and he was unusually nervous. However, Jamison was not traveling under an alias, and fully cooperated with the inquiries of the officers. Although behavior in bathroom stalls is not a drug courier profile characteristic, an additional factor I take account of is that, according to Agent Toles, Jamison entered a bathroom stall at the airport, and did not make sounds consistent with use of the stall for its usual and customary purposes.[2]

Considering the circumstances as a whole, I believe that this case is more like *Reid*, supra, 448 U. S., than *Sokolow*, supra, 490 U. S., or *Bothwell*, supra, 250 Ga. Importantly, unlike Sokolow and Bothwell, Jamison was not traveling under an alias. Moreover, unlike Bothwell, Jamison did not give false information to the airline and DEA agent regarding his telephone number. On balance, like the *Reid* Court, I find that the drug courier profile characteristics present in this case describe a large number of innocent travelers, and, even when considered along with the manner in which Jamison used the rest room facilities, do not give rise to reasonable suspicion that Jamison had committed or was about to commit a crime.

4. Having determined that Jamison was seized without reasonable suspicion, the issue becomes whether the evidence seized from Jamison should be suppressed. In this regard, I conclude that the evidence was obtained by exploitation of the illegality, in that the illegal seizure prompted Jamison to run several steps and caused Agent Toles to tackle Jamison and search him. The evidence therefore should have been suppressed. *Wong Sun*, 371 U. S. at 488.

For the reasons given in this concurrence, I would reverse the judgment of the Court of Appeals.

I am authorized to state that Chief Justice Clarke and Justice Benham join in this concurrence.

DECIDED MARCH 13, 1992.

*William E. Frey*, for appellant.
*Robert E. Keller*, District Attorney, *Clifford A. Sticher*, Assis-

---

[1] Leaving a false call-back number is generally given as a drug courier profile characteristic. *Bothwell*, supra, 250 Ga. at 575. I am uncertain that the failure to leave a call-back number is a drug courier profile characteristic, but, for purposes of this case, I assume that it is.

[2] Although I question the significance of an officer's subjective conclusion concerning whether and when he thought he had reasonable suspicion, I note Agent Toles' testimony that, based on his experience in drug courier profile cases, the circumstances surrounding Jamison's stop did not present him with reasonable suspicion that Jamison was committing a crime until the moment Jamison "broke and ran."

*tant District Attorney,* for appellee.