## 67429. PULLANO v. THE STATE.

DEEN, Presiding Judge.

Phillip Pullano appeals from his conviction of violation of the Georgia Controlled Substances Act (possession of cocaine with intent to distribute) contending that the trial court erred in denying his motion to suppress.

The evidence showed that Pullano arrived at the Atlanta airport on a flight originating in Miami, Florida, at 10:30 a.m., November 25, 1981. Officer Burkhalter of the City of Atlanta Police Department, who was assigned to the Drug Enforcement Administration at the airport, and DEA Agent Chapman observed the arrival of Delta Flight 1132 from Miami and noticed that the airplane was not full and that Pullano deplaned a few minutes after the other passengers. Officer Burkhalter was the only officer to testify at the hearing on the motion to suppress and stated that he noticed Pullano was carrying a beige shoulder tote bag and assumed he would not have to wait for any checked luggage. The officer noticed the defendant glancing around when he arrived and then approaching a Delta agent at the gate to obtain information about his connecting flight to Denver. As

the officer could not see any reason Pullano should be late in deplaning, had arrived from a known drug source city, was traveling alone and glancing nervously around, he decided further investigation was warranted because Pullano's behavior was consistent with that of drug couriers. The officer's decided to follow Pullano to his departure gate and Burkhalter positioned himself behind the Delta representative at the gate so he could observe Pullano's ticket when it was surrendered to the Delta agent. When the ticket was presented, Burkhalter noticed no baggage claim checks were attached, that the one-way ticket was issued to Phillip Pullano, and that no method of payment was indicated on the ticket. The officer testified that failure to indicate payment on the ticket indicated to him that the ticket had been paid for in cash. Burkhalter then went to a computer terminal, brought up Pullano's reservation record, discovered the reservation had been made the previous evening, and placed a person-to-person call to the Florida call-back number given on the ticket. The person who answered the phone stated Pullano was not there but was expected to return in several hours. The officer felt this information confirmed his suspicion that the defendant "very possibly could be carrying drugs on his person or in his tote bag" and decided further investigation was justified.

After checking in for his connecting flight, Pullano purchased a coke and then sat in the main concourse across from his departure gate and read a magazine. Both officers, who were dressed in civilian clothing with their weapons concealed, approached him, presented their badges and identification cards and sat on either side of him after asking permission to speak to him. Burkhalter asked to see his ticket, which was immediately surrendered, and questioned Pullano as to the purpose of his trip to Florida and the length of his stay there. When asked for identification, Pullano produced a Colorado driver's license and stated he had gone to Florida the previous evening to visit friends. The officer testified that Pullano appeared to be very nervous and that this nervousness increased after the officer informed the defendant that he and Chapman were narcotics investigators, that they had reason to suspect he might be carrying drugs, and asked for his cooperation by allowing them to search his person and tote bag. The defendant did not immediately respond and the officer told him that they could conduct the search on the spot or go to a more private area. The defendant agreed to go to a more private area and was asked to accompany the officers to a nearby office. A delay of approximately five minutes occurred while the officers waited for a person to complete a telephone call in the office. When the defendant was brought inside, the officers informed him of his rights concerning a consent search. Pullano indicated that he

understood them and stated that he wanted to consult an attorney but did not know one in Atlanta and asked the officers if they could provide him with the name of one. They declined to do so, but gave him the yellow pages of the Atlanta telephone directory. The defendant rapidly thumbed through it, but, because it was arranged differently from the Denver yellow pages, was unable to locate the section listing criminal lawyers. As his flight time was drawing near, Burkhalter told the defendant to stand up because he wanted to conduct a patdown search of his body. The defendant claims that a strip search was conducted and that he requested the presence of a witness, but the request was denied. No contraband was found. The officer again asked to see Pullano's identification, noted the information contained therein, returned it to him and advised him he was free to leave, but that his bag would be detained so it could be searched after a search warrant was obtained. The officer gave him a receipt for the bag and the defendant boarded his flight to Denver. The officer took the tote bag to a DEA office at the airport, called an Atlanta police officer and asked him to bring a dog trained in narcotics detection to the airport to determine if the bag contained contraband. The bag was taken to the luggage service area and placed among several suitcases. The dog was brought in, sniffed the luggage and alerted for drugs by pawing at the bag and biting a hole in it. Burkhalter then applied for and received a search warrant. Four ounces of white powder, later identified as cocaine, were discovered in a shaving kit in the bag. Pullano was arrested upon his arrival in Denver. *Held:*

In United States v. Mendenhall, 446 U. S. 544, 550 (100 SC 1870, 64 LE2d 497) (1980) a person's Fourth Amendment (Code Ann. § 1-804) right to be secure from unreasonable searches and seizures was found to apply to the person and effects of travelers in an airport. Except in extremely rare instances *the seizure of the person or his effects* is considered unreasonable per se unless a warrant has been obtained from a neutral magistrate upon a showing of probable cause. United States v. Place, 660 F2d 44, 47 (2d Cir. 1981). An exception, however, has been made to permit a police officer to conduct a brief investigatory stop without a showing of probable cause where the officer observes unusual conduct which, when viewed in the light of his experience, causes him to conclude that the individual is involved in criminal activity. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). In other words, this type of stop is permitted based upon an "articulable suspicion" which is "less than probable cause to make an arrest or conduct a search, but must be more than mere caprice or arbitrary harassment." *Allen v. State,* 140 Ga. App. 828, 830 (232 SE2d 250) (1976); *Radowick v. State,* 145 Ga. App. 231, 233 (244 SE2d

346) (1978).

The defendant contends that his actions were not suspicious simply because he deplaned late and looked around the airport. He claims his actions were reasonable because he was seated at the very back of the airplane in the smoking section and could not avoid being the last person off the airplane and that when he reached the arrival area he was looking around for television monitors which would give him information regarding his connecting flight. While both these explanations appear to be reasonable, we do not think the officer was unjustified in making a "Terry stop." The defendant fit the drug courier profile in four respects (arrival from an identified source city, carrying little or no luggage, rapid turnaround time for a lengthy trip, and possibly the purchase of his ticket with cash). For a description of the drug courier profile see *Bothwell v. State,* 250 Ga. 573 (300 SE2d 126); United States v. Berry, 670 F2d 583, 599 (5th Cir. 1982). When these factors are combined with the information the officer received over the telephone that Pullano would be returning to Florida in a few hours, his apparent nervousness, the fact that he deplaned at least three or four minutes after the last passenger, and the officer's testimony that his personal experience caused him to believe that the defendant exhibited the characteristics of a drug courier would be sufficient to justify an investigatory stop. See United States v. Ballard, 573 F2d 913 (2) (5th Cir. 1978), where the use of the drug courier profile when combined with the officer's own experience is recognized as a valid tool in detecting criminal activity. The reasonableness of the stop turns on the facts of the case. *Berry v. State,* 163 Ga. App. 705 (3) (294 SE2d 562) (1982); Mendenhall, supra at 561. The type of detention in a "Terry stop" is strictly regulated as to duration, intent and scope. "It is a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification, . . . and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop." *Radowick v. State,* supra at 237; *State v. Smith,* 164 Ga. App. 142, 146 (296 SE2d 141) (1982).

As in the *Smith* case, the officer's questioning should have ended when the defendant's driver's license and ticket matched the name he provided to the officer and he stated that he was returning home after visiting friends in Florida. Here, however, the officers requested that he submit to a search and he had every right to refuse. Instead, he freely consented to go with them to a nearby office so that a search could be conducted. No seizure occurred because there does not appear to be any coercion exerted by the officers; they did not produce weapons, touch him, make threats or talk to him in other

than a normal tone of voice. See *State v. Reid,* 247 Ga. 445, 449 (276 SE2d 617) (1981). Once his rights were given to him, the defendant obviously changed his mind and asked for an attorney. It was at this point that the officers overstepped their bounds. While a patdown search of the defendant's person is justified under Terry v. Ohio, supra, the officers were not authorized in seizing his personal effects without first obtaining a warrant. United States v. Place, supra. While an individual has a reasonable expectation of privacy as to the contents of his luggage and that these contents will not be exposed absent consent or a legally acquired search warrant, United States v. Goldstein, 635 F2d 356, 361 (5th Cir. 1981), this right does not extend to that part of the luggage which is exposed to the public or as to who handles checked luggage. See *Yocham v. State,* 165 Ga. App. 650 (302 SE2d 390) (1983) (weight); *Brooker v. State,* 164 Ga. App. 775 (298 SE2d 48) (1982) (odor of marijuana); *Berry v. State,* supra (odor of cocaine hydrochloride).

In the instant case, the officers were justified in making a "Terry type" stop, but they had no justification for seizing Pullano's bag. The only reason they detained the bag was because drugs were not found on Pullano's person and probable cause for both the seizure and the search were established only after the bag was seized and exposed to the drug dog.

*Judgment reversed. Banke and Carley, JJ., concur.*

DECIDED DECEMBER 5, 1983 —
REHEARING DENIED DECEMBER 20, 1983.

*Mark J. Kadish, Rosalyn S. Kadish, Alan Baverman,* for appellant.

*Robert E. Keller, District Attorney, William L. McKinnon, Jr., Assistant District Attorney,* for appellee.