## 41010. SCOTT v. THE STATE.
(317 SE2d 830)

GREGORY, Justice.

We granted certiorari in this case to determine whether petitioner's consent to search his "carry-on" bag, given to a DEA agent at the Atlanta airport, was valid. We conclude that it was and accordingly affirm the Court of Appeals' decision in *Scott v. State*, 170 Ga. App. 409 (317 SE2d 282) (1984), which upheld petitioner's conviction for trafficking in cocaine.

The following facts are not in dispute.

On November 23, 1981, Paul Markonni, an agent with the Drug Enforcement Administration, received a telephone call from Deputy Callahan of the Broward County, Florida, Sheriff's Department. At that time Deputy Callahan was assigned to the Fort Lauderdale Airport. Callahan had on previous occasions alerted Markonni to persons suspected of transporting drugs whose flights either originated in or passed through the Fort Lauderdale Airport, destined for Atlanta. Markonni testified Deputy Callahan has been responsible for "a number of drug seizures at the Atlanta airport." On this particular evening Callahan advised Markonni that petitioner, Blake Bullet Scott, had purchased, with cash, an airline ticket to Dallas with a stopover in Atlanta only twenty-one minutes prior to departure time, had no luggage other than a "small tote bag" which he was carrying, and appeared "extremely nervous, . . . looking about as if concerned that someone was watching him." Prior to petitioner's arrival Markonni verified Deputy Callahan's information that petitioner paid cash for his flight, made his reservation minutes before departure, and had no checked luggage. Markonni waited for petitioner to deplane in Atlanta and observed him for a few minutes while petitioner made a phone call. Determining that petitioner identified with many characteristics of a drug courier,[1] *Bothwell v. State*, 250 Ga. 573 (300 SE2d

---

[1] " 'The seven primary characteristics [of the drug courier profile] are: (1) arrival from or departure to an identified source city; (2) carrying little or no luggage, or large quantities of empty suitcases; (3) unusual itinerary, such as rapid turnaround time for a very lengthy airplane trip; (4) use of an alias; (5) carrying unusually large amounts of currency in the many thousands of dollars, usually on their person, in briefcases or bags; (6) purchasing airline tickets with a large amount of small denomination currency; and (7) unusual nervousness beyond that ordinarily exhibited by passengers.

" 'The secondary characteristics are (1) the almost exclusive use of public transportation, particularly taxicabs, in departing from the airport; (2) immediately making a telephone call after deplaning; (3) leaving a false or fictitious call-back telephone number with the airline being utilized; and (4) excessively frequent travel to source or distribution cities.' United States v. Berry, 670 F2d 583, 599 (5th Cir. 1982)." *Bothwell v. State*, 250 Ga. 573, 575 (300 SE2d 126) (1983).

We point out that the petitioner in this case met numbers one, two, three, six and seven of the primary characteristics and number two of the secondary characteristics of the drug courier profile.

126) (1983), cert. den. 103 SC 3545, Markonni approached petitioner. Markonni identified himself and asked petitioner to do the same. Petitioner produced a Texas driver's license which bore the same name as that on his airline ticket. Markonni testified he returned petitioner's driver's license and ticket to petitioner within "thirty seconds to maybe a minute" after he had received them. Markonni inquired about the purpose of petitioner's trip to Fort Lauderdale. Petitioner responded he had been visiting friends "for a few days."[2] Markonni testified he did not believe this answer since petitioner had only a small bag and his clothing did not show signs of having been worn for a prolonged time. At this time Markonni observed that petitioner's hands were shaking and his breathing was so agitated that his "shirt was literally fluttering." Markonni informed petitioner he was "looking for" drugs and asked petitioner whether he had drugs on his person or in his bag. Petitioner replied that he did not. Markonni then asked if he could conduct a brief search of petitioner's person and bag. Petitioner inquired why Markonni believed him to be carrying drugs. Markonni responded he had received some information from Fort Lauderdale which aroused his suspicions, but that petitioner was not required to submit to a search. At this point petitioner agreed to the search and asked Markonni to take him to "a more private place" than the airline terminal. The two proceeded to a Delta Airlines office where Markonni informed petitioner that he had the right to allow or refuse to allow a search of his person and property; that he had the right to consult with an attorney before deciding whether to permit the search; and that any illegal objects found during a search could be used against him.[3] Petitioner stated he understood these rights and that he wished to speak to an attorney. Markonni indicated an available telephone, adding, "go ahead if you're concerned about something you're carrying." Petitioner replied, "I'm concerned about my person." Petitioner testified that while he wanted to call an attorney, he did not do so because he would have had no privacy with Markonni "hovering" nearby. Petitioner testified, "so I went ahead and started emptying out the contents of my bag." Markonni stopped him, stating it was unnecessary for petitioner to empty the entire contents of the bag since Markonni could "just look through the pockets." Petitioner made no objection. Markonni found an envelope in one of the pockets containing three ounces of cocaine. Petitioner was placed under arrest and his person searched. A small amount of cocaine was

---

[2] At trial petitioner testified he had flown to Fort Lauderdale on the day in question to look for a new job.

[3] The rights given to petitioner in this case reflect "the DEA's salutary practice of informing individuals that they are free to refuse consent to a search and to contact a lawyer." United States v. Berry, 670 F2d 583, 597-8 (5th Cir. 1982).

found in one of petitioner's socks.

Petitioner made a motion to suppress the fruits of the search, alleging his consent to search the bag was not voluntarily made. The trial court denied the motion to suppress and the Court of Appeals affirmed. We agree with these decisions.

We hold that agent Markonni's brief investigatory stop of the petitioner was both reasonable and justified in light of the particular circumstances of this case. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *Bothwell v. State*, supra. In order to "expand the scope" of intrusion by a law enforcement officer, however, the officer must have either probable cause or the voluntary consent of the individual detained. United States v. Berry, 670 F2d 583 (5th Cir. 1982). Whether an individual's consent is, in fact, voluntary, is to be determined from the totality of all the circumstances under which consent was given. Schneckloth v. Bustamonte, 412 U. S. 218, 227 (93 SC 2041, 36 LE2d 854) (1973). The petitioner's own testimony in this case persuades us that his consent to the search of his bag was freely given.

It is not disputed that after petitioner identified himself Markonni informed petitioner he would appreciate petitioner's cooperation in permitting a search, but that petitioner was not required to submit to a search. Petitioner agreed to the search but requested that it be made in a more private location. Once inside the airline office Markonni again advised petitioner of his right "to refuse to allow" a search and his concomitant right to an attorney to assist in making this decision. Upon petitioner's request to call an attorney, a phone was made available. Petitioner himself testified that he did not call an attorney only because he did not want Markonni "hovering" over him. Last, petitioner himself unzipped his bag and made the contents available for inspection by Markonni. See United States v. Berry, 670 F2d 583, supra. There is nothing in the record to indicate that petitioner's consent was the product of coercive law enforcement procedures.

United States v. Robinson, 690 F2d 869 (11th Cir. 1982), on which petitioner relies, is distinguishable. There the issue was whether the defendant voluntarily consented to accompany the DEA agent, at the agent's request, to an airline office to conduct a search. In determining that the defendant had not given his consent freely the Eleventh Circuit focused on the fact that the DEA agent asked for and retained the defendant's driver's license and airline ticket, leaving the defendant with the apparent conclusion that he was not free to go. These circumstances are not present in the case before us. Petitioner, not Markonni, requested that they go to a private place to conduct the search and petitioner's driver's license and airline ticket were kept from him at most "a minute." In Robinson the court was

also concerned with the fact that the DEA agent asked the defendant if he was carrying drugs, thus " 'intimat[ing] that an investigation had focused on a specific individual,' " and inducing "a reasonable person to believe that failure to cooperate would lead only to formal detention." Id. at 876. It is true that in this case agent Markonni asked petitioner whether he had drugs in his possession. However, we do not think that under the totality of circumstances this lone question vitiated petitioner's clearly voluntary consent to the search.

Likewise *Pullano v. State*, 169 Ga. App. 377 (312 SE2d 857) (1983), is distinguishable on its facts in that Pullano did not consent to the DEA agent's search of his bag.

*Judgment affirmed. All the Justices concur, except Smith and Bell, JJ., who dissent.*

DECIDED JULY 5, 1984.

*Albert B. Wallace, Carl A. Adcock*, for appellant.
*Robert E. Keller, District Attorney*, for appellee.

SMITH, Justice, dissenting.

I respectfully dissent. In my view once a person is stopped in an airport based on conformity with a "drug courier profile," that person may legally be detained only as long as it takes to produce proper identification. Once this is done (as in this case), any further badgering by narcotics agents exceeds the permissible scope of a Terry stop and becomes an illegal detention if not supported by probable cause. "Agent Markonni's questioning should have ended when Smith's driver's license and ticket matched the name Smith provided to the agent, and he gave his reason for being in Fort Lauderdale . . . along with his denial that he was transporting illegal drugs. The agent's request that Smith submit to a search of his person was clearly unauthorized." *State v. Smith*, 164 Ga. App. 142, 146 (296 SE2d 141) (1982). Markonni's request was just as clearly unauthorized in this case. I would reverse the trial court's denial of the motion to suppress on this ground.