## 71766. NOLAND v. THE STATE.
(343 SE2d 763)

POPE, Judge.

James Noland brings this appeal from his conviction of two counts of burglary. His sole enumeration of error on appeal challenges the trial court's denial of his motion to suppress. *Held*:

Although not without some conflict, the evidence of record shows that in December 1983 Deputy Sheriff Pifer of Orangeburg County, South Carolina was patrolling the Holiday Inn motel near Santee because of a rash of burglaries in the area. He observed appellant in the corridor of the motel and began surveillance of him because appellant was apparently just standing around, not unloading a car or the like. When appellant observed Pifer's marked police car, he walked around the motel and then went into the motel office. Pifer followed and had a conversation with appellant about his car, a white Ford LTD. Pifer was then called away, but shortly thereafter he was notified that a

room at the Holiday Inn near the place he had first observed appellant had been burglarized of over $100,000 worth of jewelry. On March 13, 1984, while Pifer was again patrolling the motels in the Santee area due to another rash of burglaries, he observed appellant at the Holiday Inn, in the same corridor in which he had seen him the previous December. He was aware that there had been a burglary at the motel the night before. Pifer was in a marked patrol car and when appellant spotted him, he began walking around the motel and then went into the motel office. Pifer positioned himself where he could observe appellant inside the office and he observed appellant looking out toward him. Pifer moved his car and continued to watch the office. He observed appellant walking fast or running out of the office to a blue Ford LTD similar to the one Pifer had observed the previous December. (It was later determined that the two cars driven by appellant were one and the same.) Pifer observed appellant leave in a direction away from Pifer. Pifer drove around to meet him at the stop light and appellant turned his car around. A tag check was done and it came back not on file. Pifer had run a tag check in December 1983 on the car appellant had been driving and it had also come back not on file. At that point, Pifer put on his blue lights and pulled appellant over. At the same time a city police car pulled in front of appellant's car.

Appellant exited his car. He backed away from Pifer toward a wooded area and was loud, boisterous, cursing and "just acting real wild." Pifer arrested appellant for disorderly conduct, explaining (without objection) that in South Carolina a person may be arrested for disorderly conduct by "using profanity, acting loud and boisterous in a disorderly manner in public or on highways." Pifer handcuffed appellant, placed him in the patrol car and advised him of the *Miranda* warnings. Pifer also advised appellant that he had stopped him because appellant was a suspect in the motel burglaries. Appellant then told Pifer that he had jewelry in his car. Three other law enforcement officers arrived at the scene a short time later, including SCLED Agent Whetstone, who subsequently spoke with appellant in the patrol car, and Chief Deputy Smith. Appellant told Whetstone why he had been stopped and volunteered to open his trunk if the handcuffs were removed. Whetstone took appellant out of the patrol car and removed the handcuffs; appellant then removed the keys from the ignition of his car and opened the trunk. Appellant removed a black briefcase from the trunk and opened it to show the officers the contents. The briefcase contained many items of jewelry, and appellant explained that he was a precious metals dealer. Appellant produced a precious metals dealer's license from the State of Ohio. Among the jewelry contained in the briefcase was a strand of pearls which Smith recognized as similar to one having been reported as sto-

len from the Holiday Inn the night before. Appellant was then placed under arrest for grand larceny. Other items of jewelry in the briefcase resulted in appellant's indictment and conviction of the burglaries here appealed. Appellant was never formally charged with disorderly conduct.

1. Appellant first challenges the legality of Pifer's stop of his car. Under the totality of the circumstances based on the information Pifer had at the time of the stop — that he twice observed appellant in the area near where a burglary had recently occurred; that appellant was loitering suspiciously; that when appellant spotted the officer he walked away from the area, going into the motel office and watching the officer; that appellant left the office in a hurry; that he had changed the color of his car; that he left in one direction and turned around when he saw the officer; and that the license tag on his car was not on file — it was reasonable to believe that some type of criminal activity was afoot or had been afoot. Therefore, under *Terry v. Ohio*, 392 U. S. 1 (III) (88 SC 1868, 20 LE2d 889) (1968), Pifer had a right to make an investigatory stop. See, e.g., *Griggs v. State*, 167 Ga. App. 581 (1) (307 SE2d 75) (1983).

2. Pretermitting the question of the validity of appellant's subsequent arrest for disorderly conduct, we find that the trial court was authorized to determine from the evidence that appellant freely and voluntarily consented to the search of the trunk of his car. See generally *State v. Mohs*, 156 Ga. App. 480 (274 SE2d 825) (1980). Appellant argues that his consent in this case was coerced due to the fact that he was illegally in police custody, surrounded by five armed law enforcement officers, and thus in no position to refuse to comply with the requests of the officers. See *Powell v. State*, 163 Ga. App. 801 (295 SE2d 560) (1982). He further contends that he was not advised that he could withhold his consent to the search, but this argument has long been rejected as not essential to the validity of a consent to search a car. *Woodruff v. State*, 233 Ga. 840 (3) (213 SE2d 689) (1975).

In the case at bar, there was simply no evidence of coercion, duress or deceit. Rather, the idea to search the trunk of appellant's car appears to have originated with appellant himself. "[T]here is no evidence that [appellant] evinced any reluctance or was subjected to any coercion. No other factors such as youth, lack of education, low intelligence . . . harsh questioning, or use of physical force are present here. [Cits.]" *State v. Rivers*, 142 Ga. App. 96 (235 SE2d 393) (1977). "The mere fact that [appellant] was under arrest at the time does not demand a finding that his consent was as a matter of law involuntary, nothing further appearing." *Barron v. State*, 109 Ga. App. 786, 790 (137 SE2d 690) (1964); cf. *Radowick v. State*, 145 Ga. App. 231 (4) (244 SE2d 346) (1978). Likewise, the mere presence of the five armed

law enforcement officers at the scene, in and of itself, does not require a finding of coercion, etc. See *Welch v. State*, 237 Ga. 665 (9) (229 SE2d 390) (1976); *Shaw v. State*, 149 Ga. App. 853 (256 SE2d 150) (1979). Indeed, appellant felt "glad" upon the arrival of Whetstone (approximately 15 minutes after his initial arrest) due to his past acquaintance with him. He readily entered into an amicable conversation with Whetstone which resulted in appellant's unsolicited offer to show the officers the jewelry he had in the trunk of his car.

"Where the [S]tate seeks to justify a warrantless search on grounds of consent, it has the burden of proving that the consent was, in fact, freely and voluntarily given. A valid consent eliminates the need for either probable cause or a search warrant. The voluntariness of a consent to search is determined by looking to the totality of the circumstances, including such factors as . . . the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, . . . and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling." (Citations and punctuation omitted.) *Dean v. State*, 250 Ga. 77, 79-80 (295 SE2d 306) (1982). The trial court's decision on questions of fact and credibility at the suppression hearing must be accepted by the appellate courts unless clearly erroneous. *Williams v. State*, 151 Ga. App. 833 (1) (261 SE2d 720) (1979). Under the circumstances in this case, we find no error in the trial court's denial of appellant's motion to suppress. Accord *Smith v. State*, 165 Ga. App. 333 (2) (299 SE2d 891) (1983); *Brand v. State*, 129 Ga. App. 747 (201 SE2d 180) (1973); *Young v. State*, 113 Ga. App. 497 (2) (148 SE2d 461) (1966).

*Judgment affirmed. McMurray, P. J., concurs. Carley, J., concurs in judgment only.*

DECIDED MARCH 20, 1986 —
REHEARING DENIED APRIL 1, 1986 — ▮▮▮▮▮▮▮▮

*Billy N. Jones*, for appellant.
*Glenn Thomas, Jr., District Attorney, James A. Chamberlin, Jr., Robert L. Crowe, Assistant District Attorneys*, for appellee.