### 74642. THE STATE v. BASSFORD.
(359 SE2d 752)

BIRDSONG, Chief Judge.

The State appeals from the judgment of the trial court directing the suppression of the fruits of a search conducted by the police on the automobile of Barry Owen Bassford, the defendant. At approximately 11:00 a.m. on January 31, 1986, Jerry T. Abernathy, a special agent of the Georgia Bureau of Investigation, received a phone call in the Regional Drug Enforcement Office in Douglas, Georgia, from a

confidential informant. He had known the informant since August of 1985 when he had been arrested for trafficking in cocaine. The informant had agreed to provide information to the GBI and the FBI on the smuggling of marijuana from Florida, where he lives, through Georgia on the interstate system by the use of "box trailers." This was the first time the informant had presented information to him. The informant told him: He had seen Barry Owen Bassford purchase approximately six ounces of cocaine and put it in the trunk of his car. Bassford had previously purchased cocaine on several trips to Florida and then transported it to Maryland where he sold it. Bassford's car was a yellow, two-door Opel, with a CB antenna, and the words "Harley Davidson" in the rear window. The last three digits of Bassford's license tag were 820. The vehicle would be traveling from Ft. Myers, Florida, on I-95 through Georgia, with a destination of Maryland. There would be only one occupant, Bassford, who was described as white, male, 40-45 years of age, slender build, gray beard, gray hair, with tattoos on his arms.

Agent Abernathy decided to attempt an intercept in Glynn County because he had a good working relationship with officers there. He made arrangements with the Glynn County police to staff a stake-out position on I-95 with sufficient officers to apprehend the suspect. The stake-out started around 4:00 p.m. and at approximately 6:00 p.m., the officers saw a northbound 1975, yellow, two-door Opel 1900 automobile, with a CB antenna and the words "Harley Davidson" on the rear window, bearing a Maryland license tag of JCL 820. There was only one occupant, a white male. After the car was stopped, the driver was asked to identify himself. He gave his name as Barry Owen Bassford, living in Accotenk, Maryland. He had tattoos on both arms, was of slender build, was 45 years of age, and had grayish to black hair. Abernathy said he advised Bassford why they stopped him and he denied he had any drugs and consented to a search of the trunk of the car. Cocaine was found in the trunk.

Officer Abernathy said he did not attempt to secure a search warrant because they did not have a full license number and he did not know in which county he should attempt to get a search warrant. His training had been that he could not obtain a warrant for a car unless he had the full license number because he "couldn't really properly identify" the car.

Bassford testified he was heading home from Florida to Maryland when he was stopped. He said he was forced to the side of the road by three unmarked cars, but one car had blue lights on the dashboard. Officer Abernathy came to his car and asked him if he was carrying contraband. He said "no." The other officers started a search of the interior of his car and removed the keys and opened the trunk. He said he was never asked to consent and did not consent to the

search. After the cocaine was found, he was placed under arrest.

The trial court ruled "that it is not permissible for a law enforcement officer, with the time involved, to conduct a unilateral search without seeking the aid of the Courts, that's what the Courts are for, especially in view of the time. I, therefore, find that the Agent did not have probable cause to stop the defendant and that the stop, the search of the vehicle in question of the defendant was an illegal search, and therefore, the motion to suppress is granted." The State then filed this appeal. *Held*:

1. The law of search and seizure is not a static concept. For years courts were guided by the "two-pronged" test of *Aguilar v. Texas*, 378 U. S. 108 (84 SC 1509, 12 LE2d 723), when an informant's information was used as the basis for a search, i.e., (1) reliability of the informant, and (2) how he obtained his information or description of the criminal activity in such detail that the magistrate would know "he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, 393 U. S. 410, 416 (89 SC 584, 21 LE2d 637). However, in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527), the Supreme Court abandoned *Aguilar's* standards for a new "totality of the circumstances" test. Although *Aguilar* was specifically "abandoned," courts were directed to continue to consider the "closely intertwined" and "highly relevant" issues that illuminate the existence of probable cause, i.e., veracity, reliability, and basis of knowledge of the informant, in arriving at a " 'practical, nontechnical' " decision. *Gates*, supra at 238.

The court emphasized that "[i]n dealing with probable cause . . . as the very name implies, we deal with probabilities. . . . While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. . . ." The task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate has a "substantial basis for . . . conclud[ing]" that probable cause existed.' " *Gates*, supra, pp. 231-239. We note in this latter explanation of the level of information necessary to justify the magistrate's issuance of a warrant based on the person supplying hearsay information that "prior reliability" is not a controlling element, but emphasis was shifted to "veracity" and "basis of knowledge" of the person supplying the hearsay information. This court has faced this issue several

times before, and asked: "May one act on the information of an informer as to whom the magic phrase 'has given reliable information in the past' cannot be applied? An answer to the question is reached in *United States v. Harris*, 403 U. S. 573, 581 (91 SC 2075, 29 LE2d 723), where it is stated the court has never suggested that an averment of previous reliability is essential, the question being whether the informant's present information is truthful and reliable." (Emphasis deleted.) *Davis v. State*, 129 Ga. App. 158, 159-160 (198 SE2d 913); accord *Britt v. State*, 161 Ga. App. 244, 245 (288 SE2d 309); *Miller v. State*, 155 Ga. App. 399 (1) (270 SE2d 822); *Giles v. State*, 149 Ga. App. 263, 265 (254 SE2d 154).

Hence the facts known to the officer must be weighed and evaluated, not in terms of "prior reliability" of the informant, or a judicial analysis of "probable cause" to search, but "as understood by those versed in the field of law enforcement" under the "totality of the circumstances" test. *Gates*, supra at 232. Officer Abernathy knew the informant had previously dealt with cocaine, and had agreed to be an informant for the GBI and FBI. Further, the informant's detailed and explicit description of what he had personally observed entitled his information to greater weight than might otherwise be accorded. *Gates*, supra at 233. Corroboration of those details by independent police work is also of significant value. *Gates*, supra, hn. 3. Thus, even an anonymous tip, when corroborated in major part by police observation, weighs heavily in any determination of probable cause. Id. The police corroborated the informant's prediction that Bassford immediately would be returning to Maryland, from Florida, through Georgia on I-95, and his explicit description of Bassford and his car, established the accuracy and verity of the informant's information. " 'Our decisions applying the totality of circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work. . . .' "The corroboration of the . . . [informant's] predictions that [the suspect] . . . would be in Florida . . . and that he would drive the car north toward [Maryland, through Georgia on I-95] all indicated, albeit not with certainty, that the informant's other assertions also were true. "Because an informant is right about some things, he is more probably right about other facts. . . ." ' " *State v. Stephens*, 252 Ga. 181, 183 (311 SE2d 823); accord *Gates*, supra. And, all the determination of "probable cause" entails is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, supra, hn. 2.

We acknowledge the law's preference for warrants in conducting a search and seizure. However, we also recognize the lack of legal training of police officers, and if an officer reasonably concludes he has insufficient evidence to establish probable cause for the issuance of a warrant because of an incomplete license number, and lack of

certainty of the time and place of an intercept, this does not require the officer to turn his back and walk away and permit a crime to occur. *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612). To the contrary, *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) recognized that the essence of good law enforcement practice was to adopt an intermediate response by a "brief stop" of the suspicious person "to maintain the status quo momentarily" to confirm or dispel the information received. Accord *Adams*, supra at 146.

This court in *Radowick v. State*, 145 Ga. App. 231 (244 SE2d 346), followed the holding of *United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607), in which the Supreme Court found that a motorist's "freedom to use public highways" was circumscribed by a state's police power when an officer has "specific and articulable facts" which would warrant a stop of a vehicle to investigate the circumstances which provoked a reasonable and founded suspicion. The Supreme Court sanctioned limited stops as a "valid method of protecting the public and preventing crime . . . because of the importance of the governmental interest at stake, [and] the minimal intrusion of a brief stop" . . . when a police officer's observations lead him reasonably to suspect . . . a violation . . . "he may stop the car briefly and investigate the circumstances that provoke suspicion." 422 U. S. at 881. Thus, while an *unverified* tip from an unknown informant may not supply probable cause for a search or a warrant, if the information carries enough indicia of reliability, it will authorize a forcible stop of a suspect to maintain the status quo momentarily while obtaining more information. *Adams v. Williams*, 407 U. S. 143, supra; accord *Radowick*, supra at 233. In the instant case, Officer Abernathy had reasonable and articulable information to suspect that the person and car described to him by his informant would be transporting cocaine. Accordingly, under *Brignoni-Ponce*, supra, *Adams v. Williams*, supra, and *Radowick*, supra, a brief investigatory stop of Bassford's car was authorized. The trial court erred in finding "that the Agent did not have probable cause to stop the defendant. . . ." "Probable cause" is not the only standard to apply to the reasonableness of the stop of an automobile.

2. Officer Abernathy testified that after he stopped the automobile of Bassford that the defendant consented to a search of the trunk of the car where the cocaine was found. The trial court did not reach the issue of consent because it ruled there was a lack of probable cause to stop the car. The incorrect test being applied for the stop of the automobile, the judgment must be reversed and will be returned to the trial court for a determination of the issue of consent to search.

"A valid consent eliminates the need for either probable cause or a search warrant." *Noland v. State*, 178 Ga. App. 486, 489 (343 SE2d 763). Only if the issue of consent is decided adversely to the State

need the trial court consider the issue of probable cause.

*Judgment reversed and case remanded. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 14, 1987.

*Glenn Thomas, Jr., District Attorney, Robert L. Crowe, Assistant District Attorney,* for appellant.
*Donald E. Manning, John W. Davis,* for appellee.