77033. MIRANDA v. THE STATE.
(375 SE2d 295)

BENHAM, Judge.

Convicted of trafficking in cocaine and giving a false name to a law enforcement officer, appellant contends on appeal that the trial

court erred in denying her motion to suppress the incriminating evidence found in a search of her personal effects. We agree and reverse her conviction.

The only witness at the hearing on the motion to suppress was the arresting officer. He testified that he suspected appellant of transporting contraband when he saw her deplane from a flight originating in Miami. On cross-examination, he admitted that his suspicion was not based on any articulable facts, just his "gut-feeling." Nonetheless, he followed appellant through the airport, and noted that she went into a rest room and changed from a loose fitting blouse to a tight tank-top. He then positioned himself to overhear her conduct a 10-minute telephone conversation which he was unable to understand because it was conducted in Spanish. The officer then approached appellant, asked to speak with her, displayed his credentials and identified himself as a police officer, and asked for her ticket. He observed that the ticket was a one-way ticket bought with cash and there were no baggage claim tickets attached to it. While he held the ticket, the officer asked appellant three times whether the name on it was hers, receiving an affirmative answer to the third question. Returning the ticket, the officer asked appellant for identification and was told that she had none. He testified that she became very nervous during that conversation, and that he then asked her if she would allow him to search her and her purse and tote bag. When appellant indicated that she did not understand the question, he repeated it and then gestured with his hand to tell her to follow him to a small room nearby, which she did without speaking. In the room, the officer asked again for consent to search appellant, at which time she opened her tote bag, still without speaking, and took out two articles of clothing. While she stood with the clothes in her hands, the officer searched the bag himself and found cocaine. A search of her purse after her arrest revealed that the name on the ticket was not appellant's. At the close of cross-examination of the officer, he repeated that his initial stop of appellant was based solely on his hunch.

1. Appellant contends that the initial encounter between her and the arresting officer amounted to a seizure, and that since the officer lacked an articulable suspicion of wrongdoing, the seizure was illegal. We agree with appellant that the officer lacked the requisite articulable suspicion which would support a seizure, but we do not agree that the initial encounter was a seizure.

"Theoretically, there are at least three kinds of police-citizen encounters: verbal encounters involving no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by a reasonable suspicion; and 'arrests' which must be supported by probable cause. [Cits.] 'Factors determinative of whether or not an intrusion or "seizure" has occurred "include the lack of interference with the individual's pro-

gress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to avoid causing the individual . . . anxiety and fear." [Cit.]' [Cit.]" *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85) (1987).

In the present case, the evidence was sufficient to authorize the trial court, under the standard set out in *Verhoeff*, to find that the initial stop, in which the officer identified himself, asked appellant whether he could speak with her, asked for and got her ticket, then gave it back to her after questioning her about her name, was not a seizure.

2. As to the next stage of the encounter, however, we reach a different result. A person has been "seized" within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *Moran v. State*, 170 Ga. App. 837 (1) (318 SE2d 716) (1984). Under the circumstances of this case, we hold that appellant was "seized" at the point when she was taken to a room to be searched.

According to the officer's testimony, appellant indicated that she did not understand him when he asked for consent to search her. He testified that after twice getting that reaction, he asked her to go with him and gestured with his hand for her to follow. Still without giving any verbal response, appellant followed the officer to the small office where he once again asked for permission to search her. It was then that appellant put down her bag, unzipped it, and removed two articles of clothing. The officer testified that he and appellant were alone in the room and that she never gave verbal consent to the search of her bag. He also stated that he had not told her that he was a narcotics officer and that although he was carrying a card which explained an individual's right to refuse consent to a search, he never read it to appellant or told her in any other form that she need not permit a search or continue conversing with him. Applying to those facts the principles quoted above from *Verhoeff*, we hold that the evidence demands the conclusion that appellant was seized when the officer directed her by gesture to accompany him.

"Once a stop has been held a seizure, it can be constitutional only if based upon reasonable suspicion." *United States v. Berry*, 670 F2d 583, 598 (5th Cir. 1982). At the point when the officer motioned for appellant to go with him out of the airport concourse and into a small office, the only information he had gained to supplement the hunch which he testified was his only reason for stopping her was that her one-way ticket was purchased with cash, she had no identification, and she was nervous or scared. Those facts, which the officer ex-

plained in light of his experience to be typical of drug couriers, are also equally susceptible of perfectly innocent explanation. Considering the totality of the circumstances, we hold that the evidence did not establish the existence of reasonable suspicion of wrongdoing by appellant at the time she was seized. It follows, therefore, that the seizure which occurred when she was taken to a room to be searched was illegal. Id.

3. The inquiry does not end with that determination, however, because if the subsequent search was pursuant to a voluntary consent which was not a product of the illegal detention, the taint of that illegal detention would not require suppression of the evidence. *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979). "Whether an individual's consent is, in fact, voluntary, is to be determined from the totality of all the circumstances under which consent was given. [Cit.]" *Scott v. State*, 253 Ga. 147, 149 (317 SE2d 830) (1984).

In *United States v. Berry*, supra, at 597-8, the court commented on the "salutary practice of informing individuals that they are free to refuse consent to a search and to contact a lawyer." In *Scott*, supra; *Del Rio v. State*, 171 Ga. App. 381 (3) (320 SE2d 236) (1984); and *Aguero v. State*, 169 Ga. App. 462 (2) (313 SE2d 735) (1984), the fact that the accused was told of those rights was one of the factors which supported a finding that the consent was voluntary. There was no such advice given in the present case. Instead, the officer seized appellant, took her to a small room where she was alone with him, and asked again for consent to search. There is no evidence that appellant ever gave any consent to search. While her conduct in opening her bag and removing two garments, an action which did not reveal any contraband, may well have signalled acquiescence, it did not show consent. Citing *Bumper v. North Carolina*, 391 U. S. 543 (88 SC 1788, 20 LE2d 797) (1968), the court noted in *United States v. Berry*, supra at 596, that "acquiescence cannot . . . substitute for free consent." Considering that appellant was, at the time of her supposed consent to search, in illegal detention, that she was never informed of her right to refuse to consent to a search of her person and effects, and that there is no evidence of any express giving of consent on her part, we determine from the totality of the circumstances that, as a matter of law, there was no valid consent to search. The trial court erred in ruling otherwise.

It follows from our rulings that the denial of appellant's motion to suppress was error which requires the reversal of her convictions.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 9, 1988.

*Frank J. Petrella*, for appellant.

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.