A93A0790. THE STATE v. FOSTER.
(433 SE2d 109)

ANDREWS, Judge.

The State appeals from the order of the trial court granting Foster's pre-trial motion to suppress evidence. OCGA § 5-7-1 (4).

" 'When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and

will not be disturbed if there is any evidence to support them. (Cits.)' " *Rogers v. State*, 206 Ga. App. 654 (426 SE2d 209) (1992).

At a hearing on the motion, law enforcement agents testified that the Drug Enforcement Agency received information describing Foster, and indicating that he would be arriving at Hartsfield International Airport in Atlanta on a cash, one-way ticket, reserved four hours before the flight, with no checked luggage, from a drug source city, Miami. No other information was provided as to possible criminal activity. Three plainclothes officers met the flight, and watched an individual matching Foster's description leave the plane. Two of the officers approached Foster as he was walking to catch a connecting flight to Charleston. They identified themselves to Foster as police officers, and asked if they could speak with him. Foster said yes and stopped. The officers were armed, but their weapons were concealed. One officer asked if she could see Foster's airline ticket, and he handed it to her. She confirmed the information on the ticket, handed the ticket back, and asked for his name. Foster replied, giving his correct name. When asked if he had any identification, Foster replied that he had none.

The officers then further identified themselves as narcotics officers looking for evidence of drugs coming through the airport, and asked Foster if he would allow them to search his person and a small shaving bag he was carrying. Evidence showed that as the conversation continued, the officers asked Foster on four or five occasions for permission to search his bag, and he refused to consent on every occasion. During this time, Foster became increasingly nervous. Finally, Foster agreed that the officers could search his person. To accomplish this, the third officer was signaled to come over, and he, along with the other male officer, accompanied Foster to a nearby men's rest room, while the female officer remained outside. A pat-down search of Foster conducted in the rest room produced nothing.

The officer waiting outside testified she believed, but was not sure, that Foster still had the bag in his hand when he emerged from the rest room with the other two officers. The other officer testified that while in the rest room, the third officer "advis[ed] Foster he was taking the bag to give him a receipt for it," and that when they left the rest room he was "pretty sure" the third officer had the shaving bag. Upon emerging from the rest room, the third officer announced that, "Mr. Foster is going to accompany us to the office to get a receipt for his bag." The awaiting officer testified that she then asked Foster if he would allow a narcotics dog to sniff his bag, and after he consented, she told him he could accompany them to the DEA office at the airport for that purpose. The officers testified Foster was never detained, and was free to leave at any time. Evidence showed Foster was advised he did not have to consent to a search. There was no

evidence Foster was told he was free to leave, nor was it made clear how the bag would be returned to him.

The officers had a dog at the airport trained to detect the presence of narcotics by smell. At the DEA office, the dog detected the presence of narcotics in Foster's bag. Based on this additional information establishing probable cause, Foster was placed under arrest, and the officers obtained a warrant to search the bag. After the search revealed a quantity of cocaine in the bag, Foster was charged with trafficking in cocaine.

The officers did not claim they detained Foster or his bag for a stop and investigation pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). Rather, the apparent thrust of their contentions was that the encounter was simply a communication involving no coercion or detention (see *McAdoo v. State*, 164 Ga. App. 23, 26 (295 SE2d 114) (1982)), and that Foster consented to his bag being detained and checked by a narcotics dog, and voluntarily accompanied the officers to the DEA office for this purpose. Nevertheless, the "drug courier profile" evidence presented at the hearing authorized the trial court's determination in its order that the State had a right to briefly detain Foster for a *Terry*-type investigation. *State v. Grant*, 195 Ga. App. 859, 862 (394 SE2d 916) (1990); *Bothwell v. State*, 250 Ga. 573 (300 SE2d 126) (1983).

Having made this determination, the trial court concluded that once Foster clearly refused to consent to the search of his bag, the State had no right to further investigate, and that the actions taken by the officers subsequent to that point were an illegal seizure violative of the Fourth Amendment. This is an erroneous basis for granting Foster's motion to suppress. If, as the trial court concluded, the officers had a reasonable basis to conduct a *Terry*-type detention of Foster, the fact that Foster refused to consent to a search of his bag is no basis to conclude that the bag could not be otherwise briefly detained without his consent for an investigation within the scope of the *Terry* stop.[1] " '(W)hen an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* (*v. Ohio*, [supra]) and its progeny would permit the officer to detain the luggage briefly to investigate the circum-

---

[1] Based on the trial court's determination that a brief detention was authorized, this is not a case where, without any reasonable suspicion to support a non-consensual investigation, officers initiated a permissible conversation requesting consent to search, but Fourth Amendment scrutiny was subsequently triggered when the encounter lost its consensual nature. See *State v. Westmoreland*, 204 Ga. App. 312, 313 (418 SE2d 822) (1992); *Brown v. State*, 191 Ga. App. 779 (383 SE2d 170) (1989). As a practical matter, it appears the officers in this case, though having facts sufficient to support a brief detention, initially pressed for consent to search, and when no consent was given, initiated a non-consensual investigation pursuant to *Terry*, supra.

stances that aroused his suspicion, provided that the investigative detention is properly limited in scope.' *United States v. Place*, 462 U. S. 696, 706 (103 SC 2637, 77 LE2d 110). Thus, in cases involving the detention of luggage, a two-fold inquiry is in order: (1) Did the police have reasonable cause to detain the luggage? (2) Was the detention so minimally intrusive as to be justifiable upon reasonable cause? See *United States v. Sharpe*, 470 U. S. 675, 682 (105 SC 1568, 84 LE2d 605)." *Grant*, supra at 861.[2] Using a dog to sniff for evidence of narcotics is not a search, and may, under proper circumstances, be utilized as part of the investigation conducted within the limited scope of a *Terry* stop. *Place*, supra at 707-710; *Grant*, supra at 862-864; *O'Keefe v. State*, 189 Ga. App. 519, 525-526 (376 SE2d 406) (1988); *McSweeney v. State*, 183 Ga. App. 1, 3 (358 SE2d 465) (1987).

Given that the trial court determined reasonable suspicion existed for an investigatory stop, the court failed to address the necessary issue of whether the detention of Foster's bag exceeded the permissible limits of the stop. *Grant*, supra at 863. Since the trial court's order was based on an erroneous legal theory, it must be reversed, and the case remanded for consideration of the relevant issue. See *State v. Willis*, 207 Ga. App. 76, 78 (427 SE2d 306) (1993).

*Judgment reversed and case remanded. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 23, 1993.

*Robert E. Keller, District Attorney, Daniel J. Cahill, Jr., Assistant District Attorney*, for appellant.
*William E. Frey*, for appellee.

---

[2] Along with detention of the bag, detention of Foster's person is also a relevant inquiry. See *Brown*, supra at 780.