A95A2530. ALEX v. THE STATE.
(470 SE2d 305)

ANDREWS, Judge.

After a bench trial, Matthew Michael Alex was found guilty of trafficking in cocaine and simple battery. Alex appeals the trial court's denial of his motion to suppress.

1. Because the trial court denied Alex's motion to suppress, in reviewing this decision, " ' "the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. (Cits.)" ' *Rogers v. State*, 206 Ga. App. 654 (426 SE2d 209) (1992)." *State v. Foster*, 209 Ga. App. 143 (433 SE2d 109) (1993).

Therefore, we address the testimony presented under this standard. At the hearing on Alex's motion to suppress, Special Agent Robert Johnson with the Drug Enforcement Agency's (DEA) Atlanta Airport Task Force testified. Agent Johnson had twenty-five years of experience with DEA, including the past ten years during which he had worked drug interdiction at the Atlanta airport. Agent Johnson received information from a "cooperating individual at the airport" that an "individual flying under the name of Matthew Alex was traveling from Los Angeles, California, to Atlanta and continuing on to Mobile, Alabama, on a cash one-way ticket." Reservations had been

made in Los Angeles late on the evening of July 6, 1994, for a 12:10 a.m. flight to Atlanta on July 7, with continuation on to Mobile, Alabama. Based on his experience, Agent Johnson was aware that Los Angeles was a "source city" for cocaine and marijuana; that it was common for drug couriers to make quick trips, due to the "spur of the moment type of demand business" done, and to pay cash for their tickets because no identification is required for such a purchase. Also common to the trade is the use of a call-back number which is not that of the traveler. Agent Johnson further testified that his partner, Agent Perry, called the call-back number and told Agent Johnson that the party answering the phone did not know Matthew Alex.

The officers went to the Mobile gate and asked the agent to page Alex so they could identify him, which they did. They approached, wearing civilian clothing with no weapons in evidence, identified themselves as police, and asked to speak with Alex. It was five to ten minutes prior to boarding for Alex's flight to Mobile and boarding usually begins twenty to thirty minutes prior to takeoff. Johnson asked to see Alex's ticket, which Alex gave to him. The ticket was in Alex's name, but Agent Johnson saw and felt that no baggage claim tickets had been attached to the ticket, which is Delta's practice when baggage is checked. When asked for identification, Alex responded that "I lost my I.D. in Los Angeles. I was [using the bathroom] and I laid my I.D. on the counter next to me and when I was through it was gone."

When asked if he had anything else with identification on it, Alex replied negatively. He told the agents if they found his identification, he wanted it back. Johnson also knew from experience that it is common for couriers to travel without identification. Likewise, nervousness such as that displayed by Alex's trembling hands when the agents asked to see his ticket is also common with intercepted couriers. Asked about his lack of luggage, Alex said he had sent his ahead by "Federal Express or Western Union."

These events took only a matter of minutes. His ticket was returned to Alex, and he placed it in the left front pocket of his jacket. As he did so, Johnson noticed an "unusual bulge in his right front pocket." Alex was also wearing loose fitting pants and jacket. Couriers carrying drugs on their body do this in order to conceal any bulges. When asked what was in his right front pocket, Alex responded by tapping this pocket and said it was his ticket, which Johnson knew was incorrect. Alex was then advised that the two officers were narcotics agents and asked if he would consent to a search of his person. He stated he had to catch his flight and "[h]is voice was cracking, he was breathing very, very heavily." At this point, the officers concluded that the totality of circumstances suggested that Alex was carrying a controlled substance.

Alex turned to walk off, at which time the agents told him he was going to be detained while they attempted to obtain a search warrant.

Alex then pushed past the agents, and when they repeated that he was being detained, Alex shoved Johnson with his forearm and was placed under arrest for simple battery. The agents then obtained the warrant and searched Alex, finding 1,197 grams (about half a kilo) of crack cocaine taped under his armpit with duct tape.

2. "In *United States v. Mendenhall*, 446 U. S. 544, 550 (100 SC 1870, 64 LE2d 497) (1980) a person's Fourth Amendment right to be secure from unreasonable searches and seizures was found to apply to the person and effects of travelers in an airport. Except in extremely rare instances *the seizure of the person or his effects* is considered unreasonable per se unless a warrant has been obtained from a neutral magistrate upon a showing of probable cause. An exception, however, has been made to permit a police officer to conduct a brief investigatory stop without a showing of probable cause where the officer observes unusual conduct which, when viewed in the light of his experience, causes him to conclude that the individual is involved in criminal activity. In other words, this type of stop is permitted based upon an articulable suspicion which is less than probable cause to make an arrest or conduct a search, but must be more than mere caprice or arbitrary harassment." (Citations and punctuation omitted.) *Pullano v. State*, 169 Ga. App. 377, 379 (312 SE2d 857) (1983).

Using this standard, the preliminary brief stop of Alex was certainly reasonable. The issue remains as to whether the detention to allow a magistrate to consider the issue of a warrant was too lengthy.

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. [Cits.] A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. [Cit.] A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '(t)he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable.' *Cady v. Dombrowski*, 413 U. S. 433, 447, 37 LE2d 706, 93 SC 2523 (1973); [cit.]. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *United States v. Sharpe*, 470 U. S. 675, 686 (105 SC 1568, 84 LE2d 605) (1985).

Here, Alex manifested four of the seven primary characteristics of the drug courier profile: 1) arrival from a known drug source city on the west coast; 2) traveling across the country with no luggage; 3) purchasing a one-way airline ticket with cash shortly before the flight; and 4) unusual nervousness beyond that ordinarily exhibited by passengers. Additionally, he left a false call-back number with the airline. *Bothwell v. State*, 250 Ga. 573, 575 (1) (300 SE2d 126) (1983).

After he was approached, Alex's nervousness increased and he lied about what was in his right front pocket. Seeing a bulge there, the agents were authorized to investigate further. See *United States v. Robinson*, 414 U. S. 218 (94 SC 467, 38 LE2d 427) (1973) (capsules containing heroin found in crumpled cigarette package); *Chappell v. State*, 183 Ga. App. 706 (359 SE2d 686) (1987) (bulges in socks were bags containing cocaine).

The Supreme Court has emphasized that, in situations such as the present one, the judgment of seasoned officers should be treated with deference. " 'Because of their expertise, these officers are "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." *Brown v. Texas*, 443 U. S. 47, 52 n. 2 (99 SC 2637, 2641 n. 2, 61 LE2d 357) (1979).' " *State v. Grant*, 195 Ga. App. 859, 862 (2) (394 SE2d 916) (1990).

At the point at which Alex was told the officers were going to attempt to obtain a search warrant since he declined their request that he be searched voluntarily, the officers were authorized to detain him for a reasonable period of time in order to procure a warrant. To hold otherwise would undermine society's and this Court's preference in favor of warrants. See *State v. Davis*, 217 Ga. App. 225, 227 (457 SE2d 194) (1995); *Hunter v. State*, 198 Ga. App. 41, 42 (1) (400 SE2d 641) (1990); *State v. Bassford*, 183 Ga. App. 694, 696 (1) (359 SE2d 752) (1987).

3. Additionally, after Alex pushed past the agents, making contact with Johnson, they had probable cause to arrest Alex for battery and obstruction of an officer. OCGA §§ 16-5-22 and 16-10-24. Alex could be fully searched in connection with such an arrest. See, e.g., *United States v. Robinson*, supra; *Gearin v. State*, 218 Ga. App. 390, 391 (1) (461 SE2d 562) (1995).

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Johnson and Smith, JJ., concur. McMurray, P. J., Blackburn and Ruffin, JJ., dissent.*

BLACKBURN, Judge, dissenting.

I respectfully dissent from the majority as I believe Agent Johnson did not have the requisite probable cause in order to expand a brief *Terry* (*v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)) stop into a seizure of Alex's person. While the majority affirms the

trial court's denial of Alex's motion to suppress, I would reverse it.

In light of the proper standard, I would find that a brief stop of Alex was reasonable; however, "[i]n order to 'expand the scope' of intrusion by a law enforcement officer, . . . the officer must have either probable cause or the voluntary consent of the individual detained." *Scott v. State*, 253 Ga. 147, 149 (317 SE2d 830) (1984). Alex's refusal to consent to a search and his indication that he had to catch his flight was sufficient to conclude the initial stop. When Alex was detained, Agent Johnson had some knowledge of the following: Alex was traveling on a cash one-way ticket from Los Angeles to Mobile; the call-back number given with the ticket reservation was incorrect; Alex's wallet had been stolen in Los Angeles; Alex sent his luggage by Federal Express or Western Union; and Alex was extremely nervous.

The present case is similar to *Miranda v. State*, 189 Ga. App. 218, 219 (375 SE2d 295) (1988), where the arresting officer was aware of the following: the defendant arrived in Atlanta on a one-way ticket from Miami purchased with cash; the defendant changed clothes from a loose fitting blouse to a tight tank top; the defendant's ticket had no baggage claim tickets attached to it; and the defendant could not produce any identification. In determining that the officer lacked probable cause to detain the defendant we stated that "[t]hose facts, which the officer explained in light of his experience to be typical of drug couriers, are also equally susceptible of perfectly innocent explanation." Id. at 220-221.

"The seven primary characteristics of the drug courier profile are: (1) arrival from or departure to an identified source city; (2) carrying little or no luggage, or large quantities of empty suitcases; (3) unusual itinerary, such as rapid turnaround time for a very lengthy airplane trip; (4) use of an alias; (5) carrying unusually large amounts of currency in the many thousands of dollars, usually on their person, in briefcases or bags; (6) purchasing airline tickets with a large amount of small denomination currency; and (7) unusual nervousness beyond that ordinarily exhibited by passengers.

"The secondary characteristics are (1) the almost exclusive use of public transportation, particularly taxicabs, in departing from the airport; (2) immediately making a telephone call after deplaning; (3) leaving a false or fictitious call-back telephone number with the airline being utilized; and (4) excessively frequent travel to source or distribution cities." (Citation and punctuation omitted.) *Bothwell v. State*, 250 Ga. 573, 575 (300 SE2d 126) (1983).

Comparing these factors to the present case, I believe that although Alex arrived from a source city, he explained his lack of luggage and identification. Although we are aware that Agent Johnson was told by "a cooperating individual at the airport" that Alex's ticket was purchased with cash, we know nothing about the cooperat-

ing individual, the basis of this person's knowledge, or whether this person has given reliable information in the past. The only other characteristic that might apply is the false call-back number; however, the agents did not question Alex regarding the accuracy of the number which they apparently received from the cooperating individual. Based on our holding in *Miranda*, supra, I would find that the agents did not have sufficient cause to seize Alex. Therefore, Agent Johnson's attempt to keep Alex from boarding his plane was an illegal seizure, which Alex was authorized to resist. See *Brooks v. State*, 206 Ga. App. 485, 489 (425 SE2d 911) (1992). I believe the trial court was clearly erroneous in denying Alex's motion to suppress.

I am authorized to state that Presiding Judge McMurray and Judge Ruffin join in this dissent.

RUFFIN, Judge, dissenting.

I dissent, as I believe the trial court should have granted Alex's motion to suppress.

I agree that under the circumstances the agents are permitted to briefly detain Alex. However, it is required that such detention "be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the [agents'] suspicion in a short period of time. [Cits.]" *Florida v. Royer*, 460 U. S. 491, 500 (103 SC 1319, 75 LE2d 229) (1983). The agents' conduct in this case violated these requirements.

It is clear from the hearing transcript in this case that although the agents were generally suspicious that Alex may have been a drug courier, it was the "unusual bulge in his right front pocket" that peaked their suspicion. Agent Johnson asked Alex what was in his right front pocket. Agent Johnson was suspicious that Alex "was trying to conceal what was in his right front pocket." Johnson stated he had no idea what was in the pocket except that it was a bulge. Alex refused to consent to Johnson's request to "search [his] person[,]" announced that he had to catch his flight, and began to walk towards the gate. The agents detained Alex further in order to obtain a search warrant.

The investigatory stop lasted longer and was broader in scope than was necessary under the circumstances. Because the agents' suspicions were focused on Alex's right front pocket, their investigation should have been similarly focused. Thus, it was not necessary for the agents to search Alex's entire person as requested by the agents. A request for Alex's consent to search his right front pocket would have served their articulated purpose and would have been less intrusive. In like manner, the agents could have asked Alex to empty the contents of his right front pocket. The agents took neither of these ac-

tions, either of which would have confirmed or dispelled their suspicions instantly.

While "[t]he subsequent post-arrest search of [Alex] did produce drugs . . . the existence of probable cause cannot be determined on the basis of hindsight." (Emphasis omitted.) *Polke v. State*, 203 Ga. App. 306 (1), 309 (417 SE2d 22) (1992). Because the agents could not be sure that Alex possessed contraband, they should have, at least initially, employed these methods.

I am authorized to state that Presiding Judge McMurray and Judge Blackburn join in this dissent.

DECIDED MARCH 15, 1996 — 

*William E. Frey, Steve M. Frey*, for appellant.
*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney*, for appellee.