A90A0077. THE STATE v. GRANT.
(394 SE2d 916)

McMurray, Presiding Judge.

On May 8, 1987, at approximately 9:15 a.m., defendant arrived at the Atlanta airport on a commercial flight which originated in Miami, Florida. As defendant deplaned, he was observed by Agents Noe and Laumiere of the Clayton County Narcotics Unit. The agents were watching passengers deplaning from defendant's flight because Miami is a source city for illegal drugs.

Entering the concourse, defendant appeared to be "overzealous in his attempt to remain calm." So, the agents followed defendant to the baggage claim area. There, the officers noticed that defendant was unusually nervous. He dropped his ticket envelope several times; he looked through the windows towards the parking area numerous times.

The agents watched defendant take an airline garment box off of the baggage carousel and bring it to a security guard. The security guard removed the baggage claim ticket. Instead of exiting the terminal with the garment box, defendant turned and walked parallel to the windows of the terminal. At that point, the agents approached defendant and, identifying himself as a police officer, Agent Noe asked if he could speak with defendant for a moment. Defendant stopped and Agent Noe asked if he could see defendant's airline ticket. Defendant complied, handing the agent the ticket.

Agent Noe observed that the ticket was issued to "Reginald Coney"; that it was a one-way cash ticket; and that it was picked up earlier in the day at the airport in Miami. These facts were significant to the agents because drug couriers often purchase one-way cash tickets shortly before their departure.

As he looked at the ticket, Agent Noe asked defendant his name and defendant replied, "Mr. Coney." Thereupon, the agent asked defendant if he had any identification and he replied that he did not. The agent advised defendant that a driver's license, credit card, a receipt bearing his name or any such thing would suffice as identification. Without searching his pockets, defendant replied that he had no

such documentation. The agents deemed the lack of identification significant because most people who give false names do not produce identification when asked.

Agent Noe asked defendant why he had come to Atlanta and he replied that he had come to visit a cousin. At that time, the agent observed that defendant "had become extremely nervous . . . you could visibly see that his chest was shaking and he was bouncing from one foot to the other as if he would like to leave, but he never said that." So, the agent advised defendant that he and Agent Laumiere were narcotics agents on the lookout for illegal drugs and he asked defendant if he would "cooperate with us and allow us to search you and your luggage." Defendant stated that he would cooperate if the agents possessed a search warrant. Advising that they did not have a search warrant, Agent Noe again asked defendant if he would permit the agents to conduct a search. Defendant again replied, "If you don't have a search warrant, you can't search me."

Agent Noe again noticed that defendant was extremely nervous. He observed that defendant was sweating on his forehead even though it was rather cool in the terminal. At that point, Agent Noe informed defendant that he was free to leave but that the agents were going to detain his bag. He added that defendant could accompany the agents to their office and obtain a receipt for the bag. Defendant said he would go with the agents to their office. When they arrived, Agent Noe filled out a receipt for the bag. Defendant said he did not know a phone number at which he could be reached so Agent Noe gave him a piece of paper with his name and number to enable defendant to get in touch with him about the bag. Thereupon, Agent Noe walked defendant to the transportation area and pointed out the taxicabs.

Placing a call to the Douglas County Sheriff's Department, Agent Noe requested that a drug detector dog, "Kilo," be brought to the airport. In the meantime, the agents learned that defendant made his airplane reservations at approximately 10:00 p.m. on May 7, 1987. This fact was significant because a majority of persons carrying contraband make last minute travel reservations.

The drug detector dog arrived at the airport at approximately 10:55 a.m. (about an hour after it was summoned). The agents lined up five bags for sniffing. One of the bags was the bag they received from defendant. Walking down the luggage lineup, the dog immediately alerted to defendant's bag.

The drug detector dog had been used to detect drugs in the past and his previous alerts had proven to be accurate. Accordingly, Agent Noe obtained a search warrant for defendant's bag. Searching the bag pursuant to the warrant, the agents discovered approximately 140 grams of cocaine.

Almost one year later, the agents learned defendant's true identity and he was indicted for violating the Georgia Controlled Substances Act and giving a false name to a law enforcement officer. At the arraignment, defendant entered a not guilty plea.

Subsequently, defendant filed a motion to suppress evidence and, following a hearing, the trial court granted the motion. The State appeals, enumerating error upon the grant of the motion to suppress. *Held*:

1. "[W]hen an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* [*v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)] and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." *United States v. Place*, 462 U. S. 696, 706 (103 SC 2637, 77 LE2d 110). Thus, in cases involving the detention of luggage, a two-fold inquiry is in order: (1) Did the police have reasonable cause to detain the luggage? (2) Was the detention so minimally intrusive as to be justifiable upon reasonable cause? See *United States v. Sharpe*, 470 U. S. 675, 682 (105 SC 1568, 84 LE2d 605).

2. In *United States v. Sokolow*, 490 U. S. ___ (109 SC 1581, 104 LE2d 1), defendant Sokolow was stopped by Drug Enforcement Administration ("DEA") agents after arriving at Honolulu International Airport on a flight from Miami. The following facts led the agents to stop him: (1) Miami is a known source city for illegal drugs; (2) defendant Sokolow stayed in Miami only 48 hours even though a round-trip flight from Honolulu to Miami takes 20 hours; (3) he paid cash ($2,100) for two airplane tickets (he was traveling with a companion) from a roll of $20 bills; (4) he was traveling under a name which did not match the name for his telephone number; (5) he did not check his luggage; and (6) he appeared to be nervous.

Following the stop, defendant Sokolow was escorted to the DEA office where a drug dog alerted to defendant Sokolow's shoulder bag. He was arrested and the agents obtained a warrant to search the shoulder bag. Although the bag did not contain contraband, it did contain documents indicating defendant Sokolow's involvement in drug trafficking. The drug dog examined his other luggage and alerted to another bag. Because it was too late to obtain another warrant, the agents permitted defendant Sokolow to leave — but they kept his luggage. The next morning, the agents obtained a warrant and found 1,063 grams of cocaine in defendant Sokolow's bag. He was indicted for possession with intent to distribute cocaine and subsequently moved to suppress the cocaine and other evidence seized by the agents. The district court denied the motion to suppress, ruling that the agents had a reasonable suspicion that defendant Sokolow was

engaged in drug trafficking when they stopped him. The United States Court of Appeals for the Ninth Circuit reversed and the United States Supreme Court granted certiorari.

Reversing the judgment of the Ninth Circuit Court of Appeals, the Supreme Court held that the agents had reasonable grounds to suspect that defendant Sokolow was involved in transporting illegal drugs. In this regard, the court observed that although each fact known to the agents did not, by itself, amount to reasonable suspicion, "taken together," they did.

In the case sub judice, defendant Grant traveled to Atlanta from Miami, a known drug source city; he purchased a one-way ticket with cash and picked it up at the airport in Miami the day of his flight; he was unusually nervous; he was unable to produce identification after he was approached by the agents; and he became even more nervous when he was addressed. In our view, these facts were sufficient to authorize the agents to detain defendant's bag. Although the individual facts known to the agents were consistent with innocent travel, taken together, they provided the agents with a reasonable suspicion that defendant Grant was transporting illegal drugs.

The mere fact that defendant Grant's behavior fit a "drug courier profile" does not lead us to another conclusion. As the Supreme Court stated in *United States v. Sokolow*, 490 U. S. ___, 104 LE2d 1, 12, supra: "A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent."

In passing, we pause to mention that in considering cases of this kind "[t]he Supreme Court has emphasized that courts should treat the judgment of experienced officers with a considerable amount of deference. Because of their expertise, these officers are 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.' *Brown v. Texas*, 443 U. S. 47, 52 n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979). . . . Therefore, viewing the facts from the standpoint of an experienced officer, reasonable suspicion might exist where it would not exist if the same facts were viewed from the standpoint of an untrained observer." *United States v. White*, 890 F2d 1413 (8th Cir. 1989) (concurring opinion).

3. In *United States v. Place*, 462 U. S. 696, supra, defendant Place aroused the suspicions of DEA agents at Miami International Airport but he was permitted to board a flight bound for New York's La Guardia Airport. On the basis of defendant Place's parting remarks and a subsequent investigation revealing discrepancies concerning the telephone number and address used by defendant Place,

the Miami agents called the DEA authorities in New York and informed them about defendant Place. Two agents waited for defendant Place when he deplaned. Again, his behavior aroused the agents' suspicions. The agents approached him and, following some colloquy, asked if he would consent to a search of his luggage. When defendant Place refused, one of the agents informed him that they were going to take his luggage to a federal judge to obtain a search warrant and that he could accompany them. Defendant Place declined to do so, but he obtained telephone numbers to reach the agents later. The agents took the luggage to Kennedy Airport and subjected the bags to a canine "sniff test." The test was conducted 90 minutes after defendant Place's luggage was seized. The dog alerted and, subsequently, the agents secured a search warrant. Over 1,100 grams of cocaine were found when the warrant was executed, and defendant Place was indicted for possession of cocaine with intent to distribute. He moved to suppress the contents of the luggage. The district court denied the motion, but the United States Court of Appeals for the Second Circuit reversed. The appellate court reasoned that reasonable suspicion existed for an investigatory stop, but the prolonged detention of defendant Place's luggage exceeded the permissible limits of such a stop.

The Supreme Court refused to adopt a time limit for the permissible detention of luggage based upon a reasonable suspicion. Nevertheless, it held that the 90-minute detention of defendant Place's luggage was unreasonable and violated his Fourth Amendment rights. In reaching its conclusion, the court took into account the lack of diligence on the part of DEA agents, noting that the agents expected defendant Place's arrival at New York's La Guardia Airport and had ample time to arrange the presence of a drug detector dog. The court also noted that the unreasonableness of the detention was "exacerbated by the failure of the agents to accurately inform respondent of the place to which they were transporting his luggage, of the length of time he might be dispossessed, and of what arrangements would be made for return of the luggage if the investigation dispelled the suspicion." 462 U. S. at 710.

In *United States v. Sharpe*, 470 U. S. 675 (105 SC 1568, 84 LE2d 605) the Supreme Court determined that a 20-minute detention of an automobile driver did not exceed the bounds of an investigative stop. In so ruling, the court distinguished *Place* on the ground that the police in *Sharpe* did not *"unnecessarily"* prolong the driver's detention. In this regard the court interpreted *Place* as follows: "[T]he rationale underlying that conclusion [the detention of Place's luggage was unreasonable] was premised on the fact that the police knew of respondent's arrival time for several hours beforehand, and the Court assumed that the police could have arranged for a trained narcotics dog

in advance and thus avoided the necessity of holding respondent's luggage for 90 minutes." 470 U. S. at 684, 685. Unlike the agents in *Place*, the court stated that the police in *Sharpe* were reacting to a "swiftly developing situation." 470 U. S. at 686. Thus, the conduct of the police in *Sharpe* was viewed by the court as being more reasonable than the conduct of the agents in *Place* and the detention of the automobile driver was upheld.

In upholding the 20-minute detention in *Sharpe*, the Supreme Court made it clear that rigid time limitations have no place in a *Terry* stop analysis: "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. We sought to make this clear in Michigan v. Summers, [452 U. S. 692 (101 SC 2587, 69 LE2d 340)]: 'If the purpose underlying a *Terry* stop — investigating possible criminal activity — is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry* and *Adams* (*v. Williams*, 407 U. S. 143 [(92 SC 1921, 32 LE2d 612)] (1972)).' 452 U. S., at 700, n. 12, [(101 SC 2587, 69 LE2d 340)]." *United States v. Sharpe*, 470 U. S. 675, 685, 686, supra.

In the case sub judice, more than one hour passed between the time the agents seized defendant Grant's bag and the drug detector dog supplied the agents with probable cause for a warrant. Thus, upon a strict time analysis, this case is close to the 90-minute detention condemned in *Place*. We are not prepared to say, however, that the length of the detention rendered it unreasonable. Why? Because the agents did not unnecessarily prolong the detention of defendant's bag. Unlike the agents in *Place*, the agents in the case sub judice were not forewarned about defendant Grant's arrival. Thus, it cannot be said that they should have had a drug detector dog ready and waiting at the airport to greet the defendant. See in this connection *United States v. Alpert*, 816 F2d 958, 963 (4th Cir. 1987), wherein the court found a 50-minute detention of luggage to be a minimal intrusion, declining to "require a *per se* rule that the police keep their narcotics dogs at the airport whenever they are observing incoming flights for drug couriers." Moreover, unlike the agents in *Place*, the agents in the case sub judice attempted to arrange for the return of defendant Grant's bag in the event no contraband was found.

In the case sub judice, the agents acted diligently in a situation they did not necessarily expect to happen. See *United States v. Hardy*, 855 F2d 753, 761 (11th Cir. 1988) (50-minute roadside stop did not violate Fourth Amendment rights where police acted with propriety and diligence in arranging for a drug detector dog). The detention of defendant Grant's bag was not prolonged needlessly and the agents tried to make arrangements for its return. In our view, the

intrusion was minimal and was justifiable upon reasonable cause. It did not violate defendant's Fourth Amendment rights.

4. The trial court erred in granting defendant's motion to suppress evidence.

*Judgment reversed. Carley, C. J., and Sognier, J., concur.*

DECIDED MAY 22, 1990 —
REHEARING DENIED JUNE 8, 1990 — 

*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney*, for appellant.
*William H. Turner, Jr.*, for appellee.