## 72812. DIXON v. THE STATE.
(348 SE2d 742)

POPE, Judge.

William Travis Dixon was indicted for violation of the Georgia Controlled Substances Act by possession of cocaine with intent to distribute and possession of marijuana. A second indictment for possession of firearms by a convicted felon arising from the same arrest was severed for separate trial pursuant to the procedures formulated in *Head v. State*, 253 Ga. 429 (3) (322 SE2d 228) (1984). This appeal is from the verdicts of guilty on the two controlled substances violations and the denial of Dixon's motion for new trial.

The evidence presented at trial showed that Dixon was stopped for driving his automobile in excess of 60 miles per hour in a 35 mile per hour zone by a motorcycle patrolman of the Cobb County Police Department. The patrolman radioed headquarters and then approached the car to ask Dixon, the sole occupant, to produce his driver's license and proof of insurance. Dixon began looking through the car for these items, which were never produced, and started to reach into a purple fabric "Crown Royal" drawstring bag that he took out from under the front seat. When the officer requested to be allowed to search this bag for weapons, Dixon refused, stating that he did not have any guns, but held the bag out for the officer to feel. The officer felt the bag, identifying its contents as what he thought to be a pair of hemostats, a round 35 mm film container and a rectangular object he could not identify by feeling. Dixon continued to search his car and produced a blue cigarette case he was using for a wallet, which he did not allow the officer to look into; every time Dixon opened the wallet he would turn his body to block the officer's view. When the back-up patrol car arrived after about ten minutes, Dixon was requested to exit his vehicle and walked to the patrol car where he consented to a pat-down search.

During the pat-down search the officer found on Dixon's person several pocketknives, a pair of hemostats, a syringe, a tablespoon measuring spoon, two cut down straws, a round blue-green container holding a white powdery substance subsequently tested and identified as cocaine, a cigarette pack and the blue case Dixon was using as a wallet which contained $390 in cash and two large and three small bags of a white powdery substance also identified as cocaine. The cigarette pack included a hand-rolled cigarette which later tested positive for marijuana. After the search Dixon was handcuffed and placed in the back of the patrol car, and a search of his vehicle was conducted. The contents of the Crown Royal bag found under the driver's seat consisted of two hemostats, a 35 mm film canister containing a white powdery residue, a small pair of scales, a butter knife and a twist-tie dispenser. Inside the glove compartment was a large

hunting knife and a blue-green case was recovered from the car which contained a watch, necklace, a wedding ring set and some loose stones. Over the sun visor on the driver's side two syringes and some paper envelopes were discovered. In the back seat were found a large pair of scales and a brown plastic container with what appeared to be "Dextrose" written on the top, containing a white powdery substance which was determined when tested to be cocaine. The officer also recovered a wooden billy-club and, from under the driver's seat, a fully-loaded .25 calibre automatic pistol. Several items of clothing in the back seat were not seized. Dixon's car was impounded and the seized articles were turned over to an agent of the narcotics squad. Dixon was taken to a precinct station, where several gold chains were removed from his person, and from there to the Cobb County jail.

Prior to trial Dixon's motion to suppress introduction in evidence of the items seized from his car was denied, and the trial court also denied his motion for a continuance to allow an expert chemist to examine the contraband. After he was found guilty at trial and his motion for new trial was denied, Dixon brought this appeal.

1. In the course of examining the arresting police officer to identify the items seized from Dixon's vehicle, the State asked about certain pieces of jewelry, to which he replied: "Okay, also in the vehicle we had found . . . a blue-green cigarette case. Inside it, it contained a watch, necklace and what appears to be a wedding ring set and some stones . . . and these were held to secure the property, and also at the time we had had a series of burglaries in the area and some of the burglary investigators were interested in looking at the items to see if it would match anything that they had." Defense counsel objected to this statement as an attempt to prejudice the jury by placing Dixon's character in evidence. The court sustained the objection indicating that it would instruct the jury to disregard any statement about other officers involved in a burglary investigation who were interested in looking at the jewelry. Dixon moved for mistrial and enumerates its denial as error on appeal. We find no ground for reversal. The officer's testimony neither expressed nor implied that Dixon was involved in any burglaries and thus "did not clearly place appellant's character in issue, because the testimony was ambiguously incomplete." *Brentlinger v. State*, 173 Ga. App. 555, 556 (327 SE2d 536) (1985). Accord *Jones v. State*, 174 Ga. App. 636 (1) (331 SE2d 28) (1985); *Hall v. State*, 143 Ga. App. 706 (4) (240 SE2d 125) (1977).

2. Appellant asserts that the trial court erred in denying his motion for directed verdict and in charging the jury that cocaine was a controlled substance within the meaning of the Georgia Controlled Substances Act. He argues that the only Georgia statute that proscribes possession of cocaine is OCGA § 16-13-31, which prohibits the possession of 28 grams or more of cocaine, while the total weight of

the substances seized from him was only 24.4 grams of cocaine. Appellant has drawn an unwarranted conclusion.

OCGA § 16-13-31 deals with trafficking in cocaine, an offense which is defined as being in knowing, actual possession of 28 grams or more of cocaine or any mixture containing cocaine. OCGA § 16-13-31 (a). However, OCGA § 16-13-26 (1) (D) lists among the controlled substances included in Schedule II, "Coca leaves, any salt, compound, derivative, stereoisomers of cocaine, or preparation of coca leaves, and any salt, compound, derivative, stereoisomers of cocaine, or preparation thereof which is chemically equivalent or identical with any of these substances. . . ." Cocaine is defined as "a bitter crystalline alkaloid . . . obtained from coca leaves and synthesized. . . ." Webster's Third New Intl. Dictionary (1981 ed.). OCGA § 16-13-30 (a) and (b) makes it "unlawful for any person to possess or have under his control any controlled substance" or to "manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." Under OCGA § 16-13-30, "the unlawful possession of any controlled substance, regardless of amount, constitutes an offense. [Cit.] Thus, this enumeration of error is without merit." *Scott v. State*, 170 Ga. App. 409, 412 (317 SE2d 282), aff'd, 253 Ga. 147 (317 SE2d 830) (1984).

3. Appellant contends that the trial court erred in refusing to grant a continuance to allow an independent expert chemist of his choice sufficient time to analyze the seized controlled substances and testify at trial. Appellant did not move to have this expert appointed until after the trial had commenced, although other pretrial motions had been filed well before the date of trial. At the time of his motion appellant was unsure of the expert's name and had not contacted him, but appellant claimed that because he had been incarcerated out-of-state until less than a week before trial he had been unable to talk to his lawyer. The trial judge noted that Dixon's lawyer had been representing him for some time and stated that the court would "authorize a reasonable amount of money to be paid for an expert witness if . . . the witness was qualified and could get anything done in time to assist you during the trial without delaying the trial," since appellant had asked for a speedy trial. The next day at trial defense counsel announced that appellant's expert of choice had been contacted, that the earliest possible time he could testify would be the end of the week and that he would charge $500 a day to testify plus testing fees. The court denied the motion because it expected the trial to be over by that time, but again expressed its willingness to appoint someone else who would not unduly delay the trial.

" 'A criminal defendant on trial for his liberty is entitled *on motion timely made* to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence

whose nature is subject to varying expert opinion.' [Emphasis the court's.] [Cits.] . . . [W]e find that the facts in this case show no error in the trial court's denial of appellant's motion. . . . [Cits.]" *Prater v. State*, 171 Ga. App. 122, 123 (318 SE2d 816) (1984). Accord *Battle v. State*, 254 Ga. 666 (2) (333 SE2d 599) (1985).

4. Appellant complains that his motion to suppress the items seized from his car pursuant to a warrantless search should have been granted because he was arrested for speeding and having no proof of insurance or license, but it was later determined that he did in fact have a valid driver's license. "Even assuming that were true, the search would not thereby be rendered illegal. '(W)hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.' *New York v. Belton*, 453 U. S. 454, 460 (101 SC 2860, 69 LE2d 768) (1981). See also *State v. Hopkins*, 163 Ga. App. 141 (293 SE2d 529) (1982). Appellant was arrested on the [speeding and driving without a license or proof of insurance charges] before the passenger compartment of his automobile was searched. The search was therefore legal so long as the arrest itself was legal." *Coley v. State*, 177 Ga. App. 669 (1) (341 SE2d 9) (1986).

The arresting officer testified at the suppression hearing that the normal procedure in the event there were traffic charges with no license or proof of insurance was to take the violator into custody and impound the car. Moreover, appellant's attempts to conceal the contents of his automobile while ostensibly searching for his driver's license, as well as discovery of the items concealed on his person (including knives, suspected cocaine and drug paraphernalia) during the consensual pat-down search, provided the arresting officer with probable cause for the automobile search, since "a substantial basis existed for a belief that the [appellant's] car contained contraband at the time it was detained. [Cit.] It follows that the trial court did not err in denying the motion to suppress." *Love v. State*, 173 Ga. App. 85, 86 (325 SE2d 449) (1984), aff'd, 254 Ga. 697 (334 SE2d 173) (1985).

5. Nor do we agree that the trial court erred in refusing to strike for cause a juror who apparently was employed as a private security guard. While the voir dire examination was not recorded, the subsequent colloquy between the trial court and counsel which is included in the transcript of record persuades us that *Hutchinson v. State*, 246 Ga. 13 (1) (268 SE2d 643) (1980), the authority relied upon by appellant, does not comport with his argument. That decision, "which held that police officers, employed full-time, must be excused if challenged for cause in criminal cases, is inapplicable to this case." *Wilson v. State*, 250 Ga. 630, 635 (300 SE2d 640) (1983) (involving part-time or

auxiliary policemen). See also *Jordan v. State*, 247 Ga. 328 (6) (276 SE2d 224) (1981) (former deputy sheriff then working as prison parole supervisor). We find no ground for reversal.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 4, 1986 ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Linda B. Borsky*, for appellant.

*Thomas J. Charron*, District Attorney, *Debra H. Bernes*, Assistant District Attorney, for appellee.