**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**December 5, 2014**

# In the Court of Appeals of Georgia

A14A1267. EVANS v. THE STATE.                           JE-046C

ELLINGTON, Presiding Judge.

Following a jury trial, Nicholas Evans was convicted of possession of codeine, OCGA § 16-13-30 (a), and possession of less than one ounce of marijuana, OCGA § 16-13-30 (j). Evans argues on appeal that the trial court erred in (i) denying his motion for a directed verdict of acquittal, (ii) instructing the jury that it is unlawful to possess any quantity of codeine, (iii) refusing his request to charge the jury on "Schedule V" codeine, and (iv) denying his motion to dismiss the indictment. He also contends that because the State failed to timely produce the chemist's laboratory test results the trial court erred in denying his motion to dismiss and in admitting certain evidence. We find no error and affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that on January 27, 2012, an officer with the Gwinnett County Police Department was dispatched to investigate a report of illegal drug activity at the Deluxe Extended Stay Motel in Duluth. The officer followed the odor of marijuana to a motel room and knocked on the door. The officer knocked a second time, and Evans opened the door. The officer saw three other people inside the room.

When the officer asked about the odor of marijuana coming from the room, Evans acknowledged that they had been smoking marijuana, but that "[he had] flushed it." After Evans allowed the officer into the room, the officer noticed "a lot of over-the-counter cough syrup medication," as well as a small circular grinder. Evans admitted that the grinder was his and that there was marijuana inside. After confirming that there appeared to be marijuana inside the grinder, the officer placed Evans under arrest. During the subsequent search of Evans's person, the officer found a red bottle with a prescription on the label for a third party, F. S. According to the officer, the label on the bottle stated "Prometh Codeine." Evans was subsequently

---

[1] See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

indicted for possession of codeine and for possession of less than an ounce of marijuana.

At trial, seventy-one-year-old F. S. testified that she had been prescribed Prometh Codeine for her medical condition and that she had never given a prescription bottle in her name to anyone. F. S. had no first hand knowledge as to how the bottle came to be in Evans's possession. A chemist with the forensic sciences division of the Georgia Bureau of Investigation, who was tendered as an expert, opined that her "[a]nalysis confirms the presence of Codeine in the sample tested, Schedule v."

1. Evans contends that the trial court erred in denying his motion for a directed verdict of acquittal for possession of codeine as alleged in the indictment. Specifically, he contends that, having indicted him for possessing "codeine, a Schedule V Controlled Substance," the State failed to adduce any evidence that the liquid in the prescription bottle contained codeine "in limited quantities" together with another "nonnarcotic, active, medicinal ingredient[ ] in sufficient proportion to confer upon the compound, mixture, or preparation valuable medicinal qualities other

3

than those possessed by the [codeine] alone." See OCGA § 16-13-29 (a) (1).[2] Because these elements are required to prove that the substance he possessed was codeine as provided in the statutory definition of codeine as a Schedule V controlled substance, he contends, the evidence was insufficient to support his conviction of possessing codeine as alleged in the indictment.

---

[2] The controlled substances that are specified in Schedule V include the following:

(1) Any compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs, or salts thereof, which also contains one or more nonnarcotic, active, medicinal ingredients in sufficient proportion to confer upon the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone:

> (A) Not more than 200 milligrams of codeine, or any of its salts, per 100 milliliters or per 100 grams;
> (B) Not more than 100 milligrams of dihydrocodeine, or any of its salts, per 100 milliliters or per 100 grams;
> (C) Not more than 100 milligrams of ethylmorphine, or any of its salts, per 100 milliliters or per 100 grams;
> (D) Not more than 2.5 milligrams of diphenoxylate and not less than 25 micrograms of atropine sulfate per dosage unit;
> (E) Not more than 100 milligrams of opium per 100 milliliters or per 100 grams[.]

OCGA § 16-13-29 (1).

4

The offense at issue is set out in OCGA § 16-13-30 (a),[3] which provides that, "[e]xcept as authorized by [the Georgia Controlled Substances Act, OCGA § 16-13-20 through 16-13-56 ("the Act"),] it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance." For purposes of the Act, "'[c]ontrolled substance' means a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29 and Schedules I through V of 21 C.F.R. Part 1308." OCGA § 16-13-21 (4). Without question, the evidence at trial supported an inference that Evans possessed the prescription bottle and that the liquid in the bottle contained codeine.

Evans contends that the evidence was nonetheless insufficient to authorize the jury to find him guilty of codeine possession as alleged in the indictment because the chemist did not testify regarding the quantity of the codeine in the compound, mixture, or preparation in the bottle and that, although the chemist testified that the liquid contained Promethazine, she did not testify that Promethazine is a nonnarcotic,

---

[3] OCGA § 16-13-30 was amended by Ga. L. 2012, p. 899, § 3-7A, which amendment did not go into effect until July 1, 2012, after the offense occurred in this case. See Ga. L. 2012, p. 899, § 9-1. See also Ga. L. 2012, p. 899, §§ 3-7B and 3-7C, which became effective July 1, 2013, and July 1, 2014, respectively. As the offense here occurred on January 27, 2012, we consider this case under the statute in effect at the time of the offense. See Ga. L. 1997, p. 1311, § 4.

5

active, medicinal ingredient and that it was present in sufficient proportion to confer upon the liquid valuable medicinal qualities other than those possessed by the codeine alone. We have previously held, however, that a description in an indictment to a specified controlled substance by reference to a particular Schedule in the Act is "mere surplusage." (Citation omitted.) *Wright v. State*, 232 Ga. App. 104, 105 (2) (501 SE2d 543) (1998). That is, the Schedule which defines a substance as a controlled substance under the Act is "an unnecessary fact" in the determination of guilt. Id. See also *Freeman v. State*, 201 Ga. App. 216, 217 (2) (410 SE2d 749) (1991) (finding Indictment's reference to Schedule II "an unnecessary description of an unnecessary fact, which need not be proved").

Under the Act, codeine appears in Schedule II,[4] Schedule III,[5] and Schedule V. For purposes of sentencing an offender who is found guilty of violating OCGA § 16-13-30 (a), subsections (c), (e), (g), and (l) (1) specify the range of punishments that may be imposed, with the severity of the punishment depending on whether the controlled substance is classified within Schedule I, II, III, IV, or V. See *Williams v.*

---

[4] The controlled substances that are specified in Schedule II include the following:

> (1) Any of the following substances, or salts thereof, except those narcotic drugs specifically exempted or listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:
>
>> (A) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate, . . . including. . .
>>
>>> (vii) Codeine[.] . . .

OCGA § 16-13-26.

[5] The controlled substances that are specified in Schedule III include the following:

> (4) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing limited quantities of the following narcotic drugs, or any salts thereof:
>
>> (A) Not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium;
>>
>> (B) Not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts.

OCGA § 16-13-27.

7

*State*, 320 Ga. App. 243, 245-246 (2) (739 SE2d 727) (2013) (where appellant plead guilty to indictment charging him with selling Schedule III controlled substances but was sentenced for selling Schedule II controlled substances, the case was remanded for a hearing on which schedule the substances belonged, and for determination of which sentencing range applied); *Taylor v. State*, 144 Ga. App. 534, 536 (2) (241 SE2d 590) (1978) (evidence that some codeine was present was sufficient to show that substance in bottle was a controlled substance for purposes of OCGA § 16-13-29 notwithstanding that the evidence did not show that appellant possessed codeine in "violation of" OCGA § 16-13-27, as alleged in the indictment).[6] Under the Act, to convict Evans for possession of a controlled substance as alleged in the indictment, the State was required to show that he was in possession of codeine, which is a controlled substance. The State was not required to show that the codeine fell specifically within Schedule V. Pretermitting whether the State failed to adduce

---

[6] See also *Freeman v. State*, 201 Ga. App. at 217 (1) (OCGA § 16-13-30 (b) defines the offense of manufacturing, delivering, distributing, or selling any controlled substance, "and paragraphs (d), (f) and (h) of [OCGA § 16-13-30] specify the punishments to be imposed for violation of paragraph (b), with the severity of the punishment depending on whether the controlled substance is a narcotic drug and whether it is listed in Schedules I, II, III, IV, or V of the [Act].").

evidence showing that the preparation of codeine he possessed met the Schedule V definition, the fact that the State did adduce evidence that the preparation contained codeine defeats Evans's claim that the evidence was insufficient to convict him of possessing a controlled substance. Accordingly, the trial court did not err in refusing to direct a verdict of acquittal.

2. Evans argues that the trial court erred in charging the jury that "Count one of the accusation is a violation of the Georgia Controlled Substances Act, which provides that it is unlawful for any person to possess, or have under one's control any quantity of codeine, which is a controlled substance."[7] "In reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review." (Citation and punctuation omitted.) *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008).

Evans contends that the charge was misleading in that (i) the reference to "violation" was inaccurate because Count One was an "alleged violation," and (ii) he was not charged with possession of "any quantity" of codeine. We disagree. The charge apprised the jury that Count One of the Indictment charged a violation of the

_____

[7] The charge as given is generally consistent with the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2013), § 2.70.10.

9

Georgia Controlled Substances Act. That the violation was also an "alleged" violation is implicit given the trial court's instructions to the jury as to the State's burden of proof and the presumption of innocence. The charge is not misleading or inaccurate when considered as a whole. *Vergara v. State*, 287 Ga. 194 (3) (b) (695 SE2d 215) (2010) ("jury instructions must be read and considered as a whole in determining whether the charge contained error") (citation and punctuation omitted). Further, as it is unlawful under OCGA § 16-13-30 (a) to possess any amount of a controlled substance such as codeine,[8] the instruction as given was not misleading. See generally *Dixon v. State*, 180 Ga. App. 222, 224 (2) (348 SE2d 742) (1986).

3. Evans contends that the trial court erred in refusing to give the following written request to charge the jury:

> The controlled substances listed in this code section are included in Schedule V: Any compound, mixture, preparation containing limited qualities[sic] of any of the following narcotic drugs, or salts, thereof which also contains one or more non-narcotic, active, medicinal ingredients in sufficient proportion to confer upon the compound, mixture,[or] preparation valuable medicinal qualities other than those possess[sic] by the narcotic drug along[sic]: Not more than 200

---

[8] Absent exceptions such as lawful possession, which was charged to the jury. See OCGA § 16-13-35 (c).

10

milligrams of codeine or any of its salts per 100 milliliters or per 100 grams.

The proposed instruction, accounting for what appear to be typographical errors, is substantively the same as OCGA § 16-13-29 (1) (A), pertaining to Schedule V. Evans argues that the trial court was required to give the charge because it was his sole defense. "[T]he trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge."(Citation and punctuation omitted.) *Price v. State*, 289 Ga. 459, 459 (2) (712 SE2d 828) (2011). As discussed in Division 1, supra, the Indictment's reference to codeine as a Schedule V drug was surplusage. See *Wright v. State*, 232 Ga. at 106 (2). The State was required to show that Evans was in possession of codeine, not that the codeine fell within Schedule V. As the charge was not a defense and to suggest so was misleading, the trial court did not err in failing to give the instruction. See *Reyes v. State*, 322 Ga. App. 496, 498 (2) (745 SE2d 738) (2013) (as the instruction was not a separate and distinct defense, the trial court did not err in failing to give the charge).

4. Evans maintains that the trial court erred in denying his motion to dismiss the indictment on the grounds that OCGA § 16-13-29, pertaining to Schedule V controlled substances, is unconstitutionally vague. The record shows that Evans

11

initially filed this appeal in the Supreme Court of Georgia so that the Court could consider this argument. After reviewing the appellate record, the Supreme Court held that Evans failed to preserve this issue with a timely filed motion in the trial court. Therefore, the Court found, "no constitutional issue is properly presented in this appeal." Then, finding that there was no basis for exercising its original appellate jurisdiction, the Supreme Court transferred the appeal to this Court. Having been resolved by the Supreme Court, this alleged error is not subject to further appellate review.

5. Evans has failed to support his remaining alleged errors with any legal authority. Consequently, they are deemed abandoned on appeal. Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*